COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NOS. 2-04-450-CR
2-04-451-CR
 
  
KRISTY 
R. GARRISON                                                            APPELLANT
  
V.
   
THE 
STATE OF TEXAS                                                                  STATE
  
   
------------
 
FROM 
THE 396TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
 
I. Introduction
        The 
primary issue we address in these appeals concerns whether evidence discovered 
by Fire Investigator Timothy Hardeman during his cause and origin investigation 
of a fire at Appellant Kristy R. Garrison’s residence should have been 
suppressed.  The evidence Hardeman discovered led to the issuance of a 
search warrant for Garrison’s residence and to the discovery of additional 
evidence; Garrison subsequently pleaded guilty to manufacture of a controlled 
substance of 400 grams or more (methamphetamine) and to possession or transport 
of certain chemicals with intent to manufacture a controlled substance 
(methamphetamine).  The trial court placed Garrison on deferred 
adjudication community supervision for a period of ten years for the 
manufacturing offense and sentenced her to five years’ confinement for the 
possession offense.  Because we hold that Hardeman’s warrantless entry 
into Garrison’s residence at the tail end of the fire-fighting efforts and 
while the fire department remained in control of the premises was reasonable and 
falls within a recognized exception to the Fourth Amendment’s protections, we 
hold that the trial court did not abuse its discretion by denying Garrison’s 
motion to suppress.  See Michigan v. Clifford, 464 U.S. 287, 291-95, 
104 S. Ct. 641, 646-47 (1984); Michigan v. Tyler, 436 U.S. 499, 509-10, 
98 S. Ct. 1942, 1950 (1978).  We will affirm.
II. Factual 
Background
        A 
one-alarm fire occurred at Garrison’s residence on March 25, 2003.  The 
fire department responded; firefighters eventually extinguished the blaze.  
Investigator Hardeman was dispatched to the scene to investigate the cause and 
origin of the fire.  Investigator Hardeman arrived at the residence and the 
fire department incident commander advised him that the main body of the fire 
had been extinguished, but the fire department was still on the scene and in 
control of the premises.  Investigator Hardeman spoke with Garrison, who 
identified herself as an occupant of the burned house.  Investigator 
Hardeman told Garrison that he was going to enter the residence to conduct a 
cause and origin investigation.
        The 
residence was a one-story, wood frame house with a covered patio/carport in the 
back. Investigator Hardeman discovered several one gallon cans of acetone on the 
patio/carport.  A full-size van was parked six to eight feet from the 
house, and a small, detached metal storage shed was located east of the 
van.  Investigator Hardeman observed numerous extension cords running 
throughout the house and learned that a gas generator was being used to provide 
electricity to the residence.  He followed the extension cords to the rear 
portion of the house and discovered the remains of a gas generator located 
against the back wall of a “lean-to” type shed attached to the house.  
The rear wall of the shed had burned away, and Investigator Hardeman ultimately 
determined that the generator was the cause, or “heat source,” of the fire.
        Additional 
extension cords extended out into the yard; one orange extension cord was draped 
over the van parked near the house and extended into the detached metal 
shed.  Investigator Hardeman followed this cord to the shed and saw that 
the shed doors were open about four inches.  The extension cord was 
attached to another cord which was, in turn, plugged into a six-outlet power 
strip.  Investigator Hardeman could not see if anything else was plugged 
into the power strip, so he opened the doors to the shed and observed what he 
believed to be a methamphetamine lab.  Investigator Hardeman notified the 
incident commander of his discovery and requested further support from patrol 
officers and the narcotics unit.  Officers later acquired a warrant to 
search the residence based entirely on Investigator Hardeman’s findings.
        Investigator 
Hardeman was the only witness to testify during Garrison’s motion to suppress 
hearing.  In addition to other findings, the trial court made the following 
findings of fact:
  
2.  In the process of extinguishing the fire, members of the Fire 
Department located various items that were being used to apparently manufacture 
a controlled substance.  The Fort Worth Police Department was notified to 
respond to the location by the Fort Worth Fire Department.
 
                . 
. . .
  
4.  
A search warrant for the residence was properly obtained and, pursuant to the 
warrant, the officers began searching the residence.
 
 
The 
trial court concluded that “[t]he discovery of the items by the Fort Worth 
Fire Department was done by exigent circumstances pursuant to their response to 
the fire at the residence.”  The trial court ultimately denied 
Garrison’s motion to suppress evidence, and she entered an open plea of guilty 
to both offenses.
III. Motion to 
Suppress
        In 
her first point, Garrison argues that the trial court abused its discretion by 
denying her motion to suppress evidence because “(1) the fire had been 
extinguished and the exigency had expired with it so that a search warrant was 
required” and (2) Investigator Hardeman’s entry into the detached metal shed 
occurred after the cause and origin of the fire had been determined, thus 
requiring a search warrant because the shed’s contents were not in plain view 
and he did not have Garrison’s consent to make the entry.
        A. Standard of Review
        We 
review a trial court’s ruling on a motion to suppress evidence under a 
bifurcated standard of review.  Carmouche v. State, 10 S.W.3d 323, 
327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. 
Crim. App. 1997).  In reviewing the trial court’s decision, we do not 
engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 
543 (Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. 
App.—Fort Worth 2003, no pet.).  At a suppression hearing, the trial 
judge is the sole trier of fact and judge of the credibility of the witnesses 
and the weight to be given to their testimony.  State v. Ross, 32 
S.W.3d 853, 855 (Tex. Crim. App. 2000).  Therefore, we give almost total 
deference to the trial court’s ruling on (1) questions of historical fact and 
(2) application-of-law-to-fact questions that turn on an evaluation of 
credibility and demeanor.  Johnson v. State, 68 S.W.3d 644, 652-53 
(Tex. Crim. App. 2002); Best, 118 S.W.3d at 861-62.  However, we 
review de novo a trial court’s rulings on mixed questions of law and fact if 
they do not turn on the credibility and demeanor of witnesses.  Johnson, 
68 S.W.3d at 652-53.  We will uphold the trial court’s ruling if it is 
reasonably supported by the record and correct under any applicable theory of 
law.  State v. Steelman, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002).
        B. The Law Concerning Warrantless Entries onto 
Fire-Damaged Property
        Generally, 
except in carefully defined classes of cases, the nonconsensual entry and search 
of property is governed by the warrant requirement of the Fourth and Fourteenth 
Amendments.  Michigan v. Clifford, 464 U.S. at 291-92, 104 S. Ct. at 
646.  This general rule applies equally to fire-damaged property—unless 
the fire is so devastating that no reasonable privacy interests remain in the 
ash and ruins—absent consent or some exigent circumstances.  See id.  
A burning building creates an exigency that justifies a warrantless entry by 
fire officials to fight the blaze.  Id. at 293, 104 S. Ct. at 
646.  Once such an entry is made, officials do not need a warrant to remain 
for a reasonable time to investigate the cause of the blaze after it has been 
extinguished.  Id.  (citing Michigan v. Tyler, 436 U.S. 
at 510, 98 S. Ct. at 1950)).  When the fire has been extinguished and fire 
and police officials have left the scene, re-entry requires either a warrant or 
the identification of some new exigency.  Id. at 293, 104 S. Ct. at 
647.
        C. Application to the Present Facts
        The 
State argues at the outset that Garrison lacks standing to complain about the 
search of the detached storage shed because she had no reasonable expectation of 
privacy in the shed.  Privacy interests are especially strong in a private 
residence.  Id. at 296, 104 S. Ct. at 648.  This privacy 
interest extends to a storage shed located within the curtilage of a residence; 
entry into such a shed implicates privacy rights concerning personal property 
within the shed and may instigate a potentially violent response from a resident 
or owner of the property.  See, e.g., Garza v. State, 632 N.W.2d 
633, 639 (Minn. 2001) (recognizing resident’s privacy interest in detached 
storage shed); Ingram v. State, 703 P.2d 415, 429 (Alaska 1985) (same); see 
also Buchanan v. State, 129 S.W.3d 767, 774 n.1 (Tex. App.—Amarillo 2004, 
pet. ref’d) (recognizing expectation of privacy in home extends to curtilage 
surrounding home and citing Oliver v. United States, 466 U.S. 170, 182 
n.12, 104 S. Ct. 1735, 1743 n.12 (1984)).  Because Garrison was an occupant 
of the residence, we hold that Garrison possessed a reasonable expectation of 
privacy in the detached storage shed and that, consequently, she possessed 
standing to challenge Investigator Hardeman’s warrantless entry into the shed.
        Turning 
to Garrison’s arguments, she first argues that Investigator Hardeman was 
required to obtain a warrant to investigate at her residence because the fire 
had been extinguished and the “exigency had expired.”  Investigator 
Hardeman began his investigation just after firemen extinguished the main body 
of the fire.  Some “smoldering” was still occurring.  Fire 
department personnel were still at the scene.  The United States Supreme 
Court in both Michigan v. Clifford and Michigan v. Tyler held that 
cause and origin investigations in the immediate aftermath of a fire fall within 
the exigent circumstances exception to the warrant requirement.  See 
Michigan v. Clifford, 464 U.S. at 293, 104 S. Ct. at 647 (holding warrant 
requirement does not apply to cause and origin investigation conducted in 
immediate aftermath of fire); Michigan v. Tyler, 436 U.S. at 510, 98 S. 
Ct. at 1950 (holding officials need no warrant to remain to determine cause and 
origin of fire).  Because Investigator Hardeman conducted a cause and 
origin investigation in the immediate aftermath of the fire, he did not need a 
warrant.
        Garrison 
next argues that Investigator Hardeman needed a warrant to enter the metal shed 
because the cause of the fire had already been determined.  This argument 
would be more persuasive had Investigator Hardeman not observed the orange 
extension cord running from the generator out through the yard to the 
shed.  Although Investigator Hardeman testified that the “heat source,” 
for the fire—the fire’s origin—was the gas powered generator, he 
said that he saw the orange extension cord snaking out to the shed and that he 
entered the metal shed in the process of and in furtherance of his efforts to 
determine the cause of the fire.
  
[Prosecutor:] And, Investigator Hardeman, why were you trying to search and find 
the -- where the power cords snaked to or trying to follow the power cords from 
what you determined to be the gas generator, the origin of the heat source?
 
[Hardeman:] 
It was -- as part of the investigation, my fire investigation, I’m trying to 
determine what caused this fire.  With an electric generator, it’s 
required to provide electricity.  I was trying to determine what was being 
required of this generator.  Was it being overloaded?  What caused it 
to malfunction, if it did malfunction, to cause this fire?
 
[Prosecutor:] 
And is that normal protocol for you when you determine -- in this type of 
situation?
 
          [Hardeman:] 
Yes, it is.
   
Because 
Investigator Hardeman saw the extension cord running from the generator to the 
shed and entered the shed in furtherance of his investigation into the cause of 
the fire, his entry did not require a warrant.  See Michigan v. Tyler, 
436 U.S. at 510, 98 S. Ct. at 1950.  If officers are permitted to conduct a 
warrantless cause and origin search of a home in the immediate aftermath of a 
fire, they are equally entitled to conduct a warrantless cause and origin search 
of a detached storage shed when it reasonably appears related to the cause or 
origin of the fire.  See id.
        Garrison 
also contends that Investigator Hardeman could not enter the shed without a 
warrant because there was never any fire in the shed.  Again, this argument 
would be more persuasive if Investigator Hardeman had not observed the orange 
extension cord running from the generator to the shed.  It was this 
extension cord, linked to the point of the origin of the fire, that made 
Investigator Hardeman suspect that something in the shed may have caused the 
generator to overload or malfunction.  Because Investigator Hardeman was 
authorized to search areas where the cause of the fire would likely be found, he 
was—in light of the orange extension cord—authorized to search the 
shed.  See Michigan v. Clifford, 464 U.S. at 295 n.6, 104 S. 
Ct. at 647 n.6 (“In searching solely to ascertain the cause [of the fire], 
firemen customarily must . . . search other areas where the cause of fires are 
likely to be found.  An object that comes into view during such a search 
may be preserved without a warrant.”)  Because Investigator Hardeman 
discovered the methamphetamine lab and contraband in plain view inside the shed, 
this evidence was properly used to establish probable cause to obtain the search 
warrant.  See id. at 294, 104 S. Ct. at 647.
        We 
hold that the trial court did not abuse its discretion by determining that 
Investigator Hardeman’s cause and origin investigation fell within the exigent 
circumstances exception to the warrant requirement or by denying Garrison’s 
motion to suppress.  See Carmouche, 10 S.W.3d at 327.  We 
overrule Garrison’s first point.
IV. Motion To 
Dismiss—Collateral Estoppel
        Federal 
charges were filed against Garrison allegedly arising out of the same series of 
events giving rise to her prosecution in this case.  Eventually, in the 
federal case, the United States filed a motion to dismiss the indictment against 
Garrison, and it was granted.  Garrison then filed a motion to dismiss her 
state court indictment in this case.  She attached to her motion a copy of 
the federal motion to dismiss and the order granting dismissal.  She argued 
that the dismissal of the federal charges collaterally estopped her subsequent 
prosecution in state court.
        The 
doctrine of collateral estoppel, also known as issue preclusion, generally 
prohibits relitigation between the same parties of an issue of ultimate fact 
that has already been determined by a valid and final judgment. See Ashe v. 
Swenson, 397 U.S. 436, 443, 90 S. Ct. 1189, 1194 (1970).  Unsuccessful 
criminal prosecution by the federal government, however, typically does not 
collaterally estop the State from prosecuting an individual based on the same 
conduct even if the elements of the state and federal offenses are 
identical.  See United States v. Angleton, 314 F.3d 767, 771 
(5th Cir. 2002), cert. denied, 538 U.S. 946 (2003).  Similarly, the 
State may prosecute a defendant for the same conduct underlying a previous 
prosecution in federal court.  See Reynolds v. State, 548 S.W.2d 
733, 735 (Tex. Crim. App. 1977).  This is so because “[w]hen a defendant 
in a single act violates the ‘peace and dignity’ of two sovereigns by 
breaking the laws of each, he has committed two distinct 
‘offenses.’”  Heath v. Alabama, 474 U.S. 82, 88, 106 S. Ct. 
433, 437 (1985).  The United States and the State of Texas are separate 
sovereigns; they are not the same parties for purposes of collateral estoppel.  
See Ashe, 397 U.S. at 443, 90 S. Ct. at 1194; Angleton, 314 F.3d 
at 776.[1]   Accordingly, because Garrison 
failed to establish the first element of her collateral estoppel claim—that 
there was a full hearing at which both parties had an opportunity to 
litigate the relevant fact issue—the trial court did not err by implicitly 
denying Garrison’s motion to dismiss.  See State v. Aguilar, 947 
S.W.2d 257, 259-60 (Tex. Crim. App. 1997); see also Kappmeyer v. State, 
127 S.W.3d 178, 181-83 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (holding 
State not collaterally estopped from prosecuting defendant because United States 
and State of Texas are separate sovereigns).  We overrule Garrison’s 
second point.[2]
V. Sufficiency 
Of Fact Findings & Conclusions of Law
        In 
her third point, Garrison argues that the evidence is insufficient to support 
the findings of fact made by the trial court after the suppression 
hearing.  Our review of the trial court’s findings of fact, however, is 
limited by the applicable standard of review.  As stated above, we do not 
engage in our own factual review.  Best, 118 S.W.3d at 861.  We 
give almost total deference to the trial court’s ruling on questions of 
historical fact.  Id. at 861-62.  The testimony and evidence 
recited above support the trial court’s findings of fact; thus, we decline to 
disturb them.  See Romero, 800 S.W.2d at 543.  We overrule 
Garrison’s third point.
VI. Double 
Jeopardy
        In 
her fourth point, Garrison argues that her conviction for manufacture of a 
controlled substance and for possession or transport of certain chemicals with 
intent to manufacture a controlled substance violate the prohibition against 
double jeopardy because possession of acetone with intent to manufacture a 
controlled substance (methamphetamine) “is in truth and fact part and parcel 
of the greater offense” (manufacture of methamphetamine).  The State 
argues that Garrison has forfeited this argument by failing to raise it in the 
trial court.
        The 
double jeopardy clause of the Fifth Amendment to the United Stats Constitution 
provides that no person shall “be subject for the same offense to be twice put 
in jeopardy of life or limb.”  U.S. 
Const. amend. V. Article I, Section 14 of the Texas Constitution contains 
a similar provision and is conceptually identical to its federal 
counterpart.  Stephens v. State, 806 S.W.2d 812, 814-15 (Tex. Crim. 
App. 1990).  The guarantee against double jeopardy consists of three 
separate constitutional protections: (1) it protects against a second 
prosecution for the same offense after acquittal; (2) it protects against a 
second prosecution for the same offense after conviction; and (3) it protects 
against multiple punishments for the “same offense.”  Illinois v. 
Vitale, 447 U.S. 410, 415, 100 S. Ct. 2260, 2264 (1980); Lopez v. State, 
108 S.W.3d 293, 295-96 (Tex. Crim. App. 2003).  Garrison’s double 
jeopardy claim implicates the third, multiple punishments category.  See 
Ex parte Herron, 790 S.W.2d 623, 624 (Tex. Crim. App. 1990) (op. on reh’g).[3]
        Garrison 
failed to make a request, objection, or motion raising her double jeopardy 
complaint to the trial court. Generally, this failure to preserve error would 
preclude us from considering the alleged error.  See Tex. R. App. P. 33.1; Gonzalez v. 
State, 8 S.W.3d 640, 642-43 (Tex. Crim. App. 2000).  A double jeopardy 
claim may be raised for the first time on appeal, however, when (1) the 
undisputed facts show the double jeopardy violation is clearly apparent on the 
face of the record and (2) the enforcement of the usual rule of procedural 
default serves no legitimate State purpose.  See Gonzalez, 8 S.W.3d 
at 643; Murray v. State, 24 S.W.3d 881, 888-89 (Tex. App.—Waco 2000, 
pet. ref’d).  Both prongs of this test must be satisfied before an 
appellate court will consider a multiple-punishments double jeopardy claim that 
is raised for the first time on appeal.  See Murray, 24 S.W.3d at 
888-89 (citing Gonzalez).
        We 
first consider whether it is clearly apparent from the face of the record that 
Garrison’s convictions for manufacture of methamphetamine and for possession 
of acetone with intent to manufacture methamphetamine violate the prohibition 
against double jeopardy.  The threshold question in assessing Garrison’s 
double jeopardy issue is whether the face of the record demonstrates that she is 
being punished twice for the "same offense."  See State v. 
Perez, 947 S.W.2d 268, 270 (Tex. Crim. App. 1997).  The principal test 
for determining whether two offenses are the same for the purposes of double 
jeopardy was set out by the United States Supreme Court in Blockburger v. 
United States:
   
The applicable rule is that, where the same act or transaction constitutes a 
violation of two distinct statutory provisions, the test to be applied to 
determine whether there are two offenses or only one, is whether each provision 
requires proof of an additional fact which the other does not.
 
 
284 
U.S. 299, 304, 52 S. Ct. 180, 182 (1932).  Greater and lesser included 
offenses are the "same" offense for double-jeopardy purposes.  Parrish 
v. State, 869 S.W.2d 352, 354 (Tex. Crim. App. 1994).
        Here, 
Garrison’s indictment in the manufacturing case alleged that on or about the 
26th day of March 2003 she did
   
then and there intentionally or knowingly manufacture a controlled substance, 
namely methamphetamine of four hundred grams or more, including any adulterants 
or dilutants, by producing, preparing, propagating, compounding, converting, or 
processing said controlled substance, independently by means of chemical 
synthesis.
 
 
See 
Tex. Health & Safety Code Ann. 
§ 481.112 (Vernon 2003).  The indictment in her possession of acetone case 
alleged that on or about the 26th day of March 2003 she did
   
with intent to unlawfully manufacture a controlled substance, namely: 
methamphetamine possess or transport immediate precursor, to-wit: acetone.
 
 
See 
id. § 481.124 (Vernon Supp. 2004-05).  These two offenses, on their 
face, constitute two separate statutory offenses in that each requires proof of 
a fact which the other does not.  The manufacturing offense requires proof 
of the manufacture of over four hundred grams of methamphetamine; the possession 
charge does not.  The possession charge requires proof of possession of 
acetone; the manufacturing charge does not.[4]
        Garrison 
entered an open plea of guilty to both these offenses.  “[A] defendant 
who pleads guilty to two counts with facial allegations of distinct offenses 
concede[s] that he has committed two separate crimes.”  United 
States v. Broce, 488 U.S. 563, 570, 109 S. Ct. 757, 763 (1989) (emphasis 
added).  Garrison’s plea of guilty thus waived her right to contest the 
indictments as violative of the prohibition against double jeopardy in a 
subsequent factual proceeding below, and without such a record, the two 
indictments and remaining record are insufficient to show a double jeopardy 
violation.  See id. at 576, 109 S. Ct. at 766.  Because the 
indictments describe separate offenses and because Garrison’s double jeopardy 
argument has the effect of contradicting the indictments, additional proceedings 
by which to expand the record would be necessary to address Garrison’s double 
jeopardy claim in light of her guilty pleas.  On the face of the record, 
absent additional proceedings, no double jeopardy claim is clearly 
apparent.  Compare Saenz v. State, 131 S.W.3d 43, 50 (Tex. 
App.—San Antonio 2003, pet. granted) (concluding double jeopardy violation 
apparent from face of record because all three murders before the same court, 
all three counts before the trial court, and record fully developed); Roy v. 
State, 76 S.W.3d 87, 94 (Tex. App.—Houston [14th Dist] 2002, no pet.) 
(“Appellant stood trial for both offenses and presented a complete record of 
that trial for our consideration.”).  We hold that Garrison may not raise 
her unpreserved double jeopardy claim for the first time on appeal because it is 
not clearly apparent on the face of the record.  See Gonzalez, 8 
S.W.3d at 643; King v. State, 161 S.W.3d 264, 267-69 (Tex. 
App.—Texarkana 2005, pet. filed).  We overrule Garrison’s fourth point.
VII. Conclusion
        Having 
overruled all four of Garrison’s points, we affirm the trial court’s 
judgments.
  
   
                                                          SUE 
WALKER
                                                          JUSTICE
 
  
  
PANEL 
A:   LIVINGSTON, DAUPHINOT, and WALKER, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
July 7, 2005


NOTES
1.  
The State argued that it is not that same party as the United States at the 
hearing on Garrison’s motion to suppress and motion to dismiss.
2.  
Because Garrison failed to establish the “same parties” element of her 
collateral estoppel claim, we need not address the remaining elements of 
collateral estoppel.
3.  
Garrison argues, “As such the Appellant cannot be punished for both offenses 
and the latter must be dismissed for violation of the double jeopardy clause 
prohibition against multiple trials and punishments for the same events.”
4.  
The evidence adduced at the suppression hearing likewise indicates that 
factually these two offenses are different; the gallons of acetone were found in 
the house and in the carport while the manufacturing laboratory was found in the 
detached metal shed.