**Edward MURRAY, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 10–99–071–CR.

Court of Appeals of Texas, Waco.

July 12, 2000.

Rehearing Overruled Aug. 2, 2000.

884

John M. Hurley, Waco, for appellant.

John W. Segrest, Dist. Atty., James Wiley, Asst. Dist. Atty., Waco, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

BILL VANCE, Justice.

Edward Murray attacks his convictions for aggravated sexual assault and indecency with a child, and the enhanced sentences of life imprisonment for each offense, raising eight issues for our review. We will find that (1) the evidence is legally and factually sufficient to sustain the jury's verdict on both counts, (2) although Murray can complain for the first time on appeal that his double jeopardy rights were violated by his punishment for both offenses, his complaint is without merit, (3) Murray cannot complain for the first time on appeal that his equal protection rights, due process/due course of law rights, or his right to effective assistance of counsel were violated by the trial court's failure to inform the jury that Murray faced a mandatory life sentence if he were convicted of the aggravated sexual assault charge as a habitual sexual offender, and (4) the trial court did not err by refusing to grant a mistrial after a State's witness mentioned that he had contacted Murray's parole officer when searching for Murray or by refusing to exclude the testimony of another State's witness that Murray argues should have been disclosed to him under the court's discovery order. Having rejected all of Murray's complaints, we will affirm his convictions.

### Legal Sufficiency of the Evidence

■ We first consider Murray's attacks on the legal sufficiency of the evidence to support the jury's verdicts on both counts. In determining whether the evidence is legally sufficient to support the verdict, we view the evidence in the light most favorable to the verdict, asking whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Weightman v. State,* 975 S.W.2d 621, 624 (Tex. Crim.App.1998); *Lane v. State,* 933 S.W.2d 504, 507 (Tex.Crim.App.1996) (citing *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979)); *Westfall v. State,* 970 S.W.2d 590, 595 (Tex.App.—Waco 1998, pet. ref'd). The evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State,* 953 S.W.2d 234, 239–40 (Tex. Crim.App.1997). We consider all evidence adduced at trial whether or not properly admitted. *Fuller v. State,* 827 S.W.2d 919, 931 (Tex.Crim.App.1992); *Coleman v. State,* 979 S.W.2d 438, 440 (Tex.App.—Waco 1998, no pet.)

■ To show that Murray was guilty of aggravated sexual assault as alleged in the indictment, the State was required to prove he intentionally or knowingly caused the penetration of the victim's female sexual organ by his finger, and that the victim was a child younger than fourteen years of age who was not his spouse. TEX. PEN. CODE ANN. § 22.021(a)(1)(B)(i), (a)(2)(B) (Vernon Supp.2000). Before us, Murray

contests only the State's proof to show that he caused the penetration of the victim's sexual organ. The victim, an eleven year old girl, testified that she felt "[m]ore than one finger going in [her] vagina" during the assault by Murray. During cross-examination, she confirmed that she "felt more than one finger in [her] vagina and that it hurt[.]" The victim's testimony is sufficient to support the jury's finding that Murray caused the penetration of her sexual organ. *Vernon v. State,* 841 S.W.2d 407, 409–10 (Tex.Crim.App.1992).

■ To establish the offense of indecency with a child, as alleged in the indictment, the State was required to show that Murray knowingly or intentionally engaged in sexual contact with the victim by touching her genitals with the intent to arouse or gratify his own sexual desire, and that the victim was a child younger than seventeen years of age who was not his spouse. TEX. PEN.CODE ANN. § 21.11(a)(1) (Vernon Supp.2000). Again, Murray limits his attack on the evidence, contending that it is insufficient to show that he knowingly or intentionally engaged in sexual contact[1] with the victim. The Penal Code defines "sexual contact" to be "any touching of the anus, breast or any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person." *Id.* § 21.01(2) (Vernon 1994). Thus, we must find support in the evidence for both a touching of the victim's genitals and the intent to arouse or gratify Murray's sexual desire by that touching.

The victim testified that after Murray assaulted her with his fingers, he began to touch her on the "outside" of her vagina with his tongue. She distinguished between the penetration of her vagina by Murray's fingers and the contact by his tongue, testifying that she did not feel his tongue in the same place as she had felt his fingers because his tongue "was not in

my vagina, but it was on the outside and in between the two slits." After Murray had stopped touching her he said, "Damn, that's a big pussy." He also told the victim that "he didn't do anything bad, that he just wanted to look at [her]" after she told him that she was going to tell his girlfriend about what he had done. The State also presented the testimony of Vince York, Murray's cell mate in the McLennan County Jail, who testified that Murray told him that he "touched the [victim's] pussy."

■ This testimony is sufficient to establish both the touching and the intent-to-gratify-or-arouse requirements of "sexual contact." In the vulgar use to which the word was put here, "pussy" refers to the vulva. *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 950 (10th ed.1993). " '[G]enitals' includes the vulva which immediately surrounds the vagina." *Clark v. State,* 558 S.W.2d 887, 889 (Tex.Crim.App. 1977); *Carmell v. State,* 963 S.W.2d 833, 837 (Tex.App.—Fort Worth 1998, pet. ref'd), *rev'd on other grounds,* —— U.S. ——, 120 S.Ct. 1620, 146 L.Ed.2d 577 (2000). Thus, the evidence showing that he touched the victim on the "outside" of her vagina and that he confessed to touching her "pussy" establishes that he touched a part of her genitals.

■ The intent to arouse or gratify the sexual desire of a person can be inferred from conduct, remarks, and all of the surrounding circumstances. *McKenzie v. State,* 617 S.W.2d 211, 216 (Tex.Crim.App. 1981); *Couchman v. State,* 3 S.W.3d 155, 163 (Tex.App.—Fort Worth 1999, pet. ref'd). The evidence shows that Murray twice used the crude term "pussy" in reference to this event, once immediately after the commission of the offense and later to a confidant, statements which reasonably imply that he viewed the incident as a sexual encounter. In denying the commis-

---

1. Murray actually argues that the evidence is insufficient to show sexual "conduct." The statute, indictment, and jury charge all re-quire sexual "contact." Thus, we will test the sufficiency of the evidence to show "contact."

sion of the offense, Murray claimed to the victim that he had "just wanted to look" at her, again suggesting that his perception of the event was sexual. A jury could rationally infer from these comments and from the act itself that Murray touched the victim with the intent to arouse or gratify his own sexual desire. Thus, the evidence is legally sufficient to support the jury's finding of guilt. *Id.*

### Factual Sufficiency of the Evidence

■ Murray also argues that the evidence is factually insufficient to support the verdict. He claims that the verdict should be rejected because "of the inconsistencies between the testimony of [the victim] and ... the 'outcry' witness, the fact that [the victim's] testimony was so obviously coached as to be unreliable, ... and the fact the examining physician found no physical evidence that the offense had occurred."

■ When examining the factual sufficiency of the evidence, we recognize that the State bears the burden of proof beyond a reasonable doubt and apply the "complete and correct" standard of review set out by the Court of Criminal Appeals in *Johnson v. State*, 23 S.W.3d 1, 10–11 (Tex.Crim.App.2000). This court "asks whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the [the factfinder's] determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *Id.; see also Clewis v. State*, 922 S.W.2d 126 (Tex.Crim.App.1996).

■ Our review begins with the assumption that the evidence is legally sufficient. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex.Crim.App.1997). We are not free to re-weigh the evidence and set aside a verdict merely because we feel that a different result is more reasonable. *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App. 1997); *Clewis*, 922 S.W.2d at 135. Nor

may we reverse a decision simply because we disagree with the result. We must defer to the factfinder's findings and may find the evidence factually insufficient only where necessary to prevent a manifest injustice. *Cain*, 958 S.W.2d at 407. A decision is not manifestly unjust as to the accused merely because the factfinder resolved conflicting views of the evidence in favor of the State. *Id.* at 410.

■ Additionally, we must review all of the evidence. *Id.* at 408; *Clewis*, 922 S.W.2d at 129. The review is the same for circumstantial evidence as it is for direct evidence. *See Geesa v. State*, 820 S.W.2d 154, 158–59 (Tex.Crim.App.1991); *Reeves v. State*, 969 S.W.2d 471, 478 (Tex.App.— Waco 1998, pet. ref'd). We must consider the evidence as a whole, without the prism of the "in the light most favorable to the prosecution" construct. *Cain*, 958 S.W.2d at 408; *Clewis*, 922 S.W.2d at 129.

After reviewing the evidence as a whole, we cannot say that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or that the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. The victim testified unequivocally that the assault and other touching occurred. Although true that the out-cry witness's testimony and the victim's testimony differed, as did that of the victim and investigating officer in places, those differences are not sufficient for us to completely discount the victim's direct testimony. Although the examining doctor testified that he did not notice anything out of the ordinary during his physical examination of the victim, he explained that this finding was not unusual in cases of abuse such as that described by the victim and that in approximately seventy-five to eighty percent of confessed sexual abuse cases there is no evidence of physical trauma. Therefore, we find that the evidence is factually sufficient to support the jury's verdict. *Johnson*, at 10–11; *Cain*, 958 S.W.2d at 407.

## Double Jeopardy

Murray claims that his conviction of both aggravated sexual assault and indecency with a child violates his double jeopardy rights under both the Federal and State Constitutions because indecency with a child is a lesser-included offense of aggravated sexual assault. The Double Jeopardy Clause of the United States Constitution embodies three protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense. *Illinois v. Vitale,* 447 U.S. 410, 415, 100 S.Ct. 2260, 2264, 65 L.Ed.2d 228 (1980); *Ex parte Broxton,* 888 S.W.2d 23, 25 (Tex.Crim.App.1994). Convictions of both the greater and lesser-included offense arising out of the same act violate the multiple-punishment prohibition contained in the clause. *Hutchins v. State,* 992 S.W.2d 629, 632 (Tex.App.—Austin 1999, pet. ref'd, untimely filed).

Murray concedes that he did not present his multiple-punishment claim to the trial court. *See* Tex.R.App. P. 33.1(a). He is excused from the preservation requirement when "[1] the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and [2] when enforcement of usual rules of procedural default serves no legitimate state interests." *Gonzalez v. State,* 8 S.W.3d 640, 643 (Tex.Crim.App.2000).[2] Because the portion of *Gonzalez* which sets out the test uses "and" to connect the two elements, we must find that both of

2. The Beaumont Court of Appeals appears to have interpreted *Gonzalez* to impose a strict preservation requirement on all double jeopardy claims. *Hernandez v. State,* 10 S.W.3d 812, 817–18 & n. 1 (Tex.App.—Beaumont 2000, no pet. h.) (citing *Gonzalez v. State,* 8 S.W.3d 640, 641 (Tex.Crim.App.2000)). We believe, however, that *Gonzalez* actually held that the preservation requirement in this context is flexible, depending upon the outcome of the test quoted above. This puts double jeopardy claims in an odd category under our preservation requirements principles. On the one hand, double jeopardy rights are frequently referred to as "fundamental." *See, e.g., Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969) (finding "that the double jeopardy prohibition of the Fifth Amendment represents a fundamental ideal in our constitutional heritage"); *Gonzalez,* 8 S.W.3d at 643 (acknowledging the "fundamental nature of double jeopardy protections"); *Ex parte Rathmell,* 717 S.W.2d 33, 35 (Tex.Crim.App.1986) (referring to double jeopardy as "a fundamental feature of both the Federal and State Constitutions"); *Burke v. State,* 6 S.W.3d 312, 316 (Tex.App.—Fort Worth 1999, pet. granted) (recognizing that "the issue of double jeopardy is fundamental"). As a fundamental right, double jeopardy would reasonably be included within those "rights [that] are widely considered so fundamental to the proper functioning of our adjudicatory process as to enjoy special protection." *Marin v. State,* 851 S.W.2d 275, 278 (Tex.Crim.App.1993), *overruled on other grounds, Cain v. State,* 947 S.W.2d 262, 264 (Tex.Crim.App.1997). This right should not be forfeited by inaction alone, but may only

be relinquished by some affirmative action by the defendant. *Id.* at 278–79; *see also Gonzalez,* 8 S.W.3d at 646 (Meyers, J., dissenting); *Ex parte Hawkins,* 6 S.W.3d 554, 562 n. 1 (Tex.Crim.App.1999) (Meyers, J., concurring). However, the *Gonzalez* decision muddles this treatment of double jeopardy rights, creating a hybrid category of rights, a right which might be required to be implemented absent waiver by the defendant in some situations but must be implemented only on request by the defendant in others. In the scheme laid out by the Court in *Marin,* after the *Gonzalez* decision, double jeopardy rights are somewhere between categories 2 and 3. This is an ill-advised departure from the well-reasoned analysis by the Court in *Marin.* What is needed in the area of the rules governing preservation is a unifying framework under which all preservation issues can be decided. *Marin* provided that framework and is probably the single most important opinion issued by the Court of Criminal Appeals during the 1990's, if given appropriate attention. By its opinion in *Gonzalez* the Court retreats from the unifying framework set out in *Marin,* a retreat that can do nothing but further undercut *Marin* and confuse the courts' handling of preservation issues. The Beaumont Court noted Presiding Judge McCormick's comment in *Gonzalez* that the Court's double jeopardy jurisprudence has not been a model of clarity with the laconic remark that "[t]he tradition continues." *Hernandez,* 10 S.W.3d at 818 n. 1. In the area of preservation, the tradition continues as well.

them are satisfied to find that Murray was not required to preserve his complaint. *See id.* We conclude that both elements are satisfied.

First, the record is fully developed. Murray has stood trial for both offenses and has presented a complete record of that trial for our consideration. His claim can be resolved on the basis of the existing record and there is no necessity for further proceedings at which to expand the record with new evidence. *See id.* at 644 (citing *United States v. Broce,* 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989), and *Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975)). Thus, if there is a double jeopardy violation, it can be determined from undisputed facts clearly apparent on the face of the record. *Id.*

Second, enforcement of the usual procedural default rules serves no legitimate state purpose in this situation. The appropriate remedy for any double jeopardy violation here is to vacate one of the convictions. *Ball v. United States,* 470 U.S. 856, 864–65, 105 S.Ct. 1668, 1673–74, 84 L.Ed.2d 740 (1985); *Landers v. State,* 957 S.W.2d 558, 559 (Tex.Crim.App.1997). As a matter of state law, we are required to retain the conviction with the "most serious punishment," and vacate any remaining convictions that are the "same" for double jeopardy purposes. *Landers,* 957 S.W.2d at 560. The change wrought by a successful double jeopardy challenge would not require retrial or even a remand to the trial court. Thus, there are no adverse consequences resulting from allowing Murray to raise a double jeopardy claim for the first time on appeal, and no legitimate state interests are negatively impacted by doing so. *See Shaffer v. State,* 477 S.W.2d 873, 875–76 (Tex.Crim. App.1971); *Duckett v. State,* 454 S.W.2d 755 (Tex.Crim.App.1970). Because both elements of the *Gonzalez* test are satisfied, Murray is allowed to raise his claim that his double jeopardy rights were violated in this case for the first time on appeal.

To resolve Murray's challenge, we must "focus[ ] on whether the evidence in this cause justified the trial court in submitting instructions that would permit the jury to convict and sentence appellant both for committing aggravated sexual assault and for committing indecency with a child[.]" *Ochoa v. State,* 982 S.W.2d 904, 907 (Tex.Crim.App.1998). This is not a situation where Murray "committed one act which could be subject to two different interpretations." *See id.* at 908. Rather, the evidence demonstrates that Murray committed two separate acts—penetrating the victim's female sexual organ with his finger and touching her genitals with his tongue—that constituted two separate offenses. On these facts, indecency with a child is not a lesser included offense of aggravated assault. *Id.* Because the evidence at trial showed that two offenses were committed by two distinct acts, under *Ochoa* the State was entitled to seek convictions for both, and Murray's double jeopardy rights are not violated by his punishment for both offenses. *Id.*

### Mandatory Life Sentence

Murray complains that the jury was not told that he would face a mandatory sentence of life imprisonment if the finder of fact found him guilty of aggravated sexual assault and the punishment-enhancement paragraphs of the indictment were found true. The offense which Murray was convicted of occurred in August 1997. At that time, the governing statute provided, in relevant part, that:

A defendant shall be punished by imprisonment in the institutional division for life if:

(A) the defendant is convicted of an offense:

(i) under Section 22.021, Penal Code

. . .

and

(B) the defendant has been previously convicted of two felony offenses, at least one of which is an offense:

. . .

(ii) under Section 21.11, 22.011, 22.021, or 25.02, Penal Code[.]

Act of May 25, 1995, 74th Leg., R.S., ch. 250, § 1, 1995 Tex. Gen. Laws 2176, *amended by* Act of May 23, 1997, 75th Leg., R.S., ch. 665, § 2, 1997 Tex. Gen. Laws 2247, 2248 (current version at Tex. Pen.Code Ann. § 12.42(c)(2) (Vernon Supp. 2000)). Murray was charged with an offense under section 22.021 of the Penal Code, aggravated sexual assault, and the State alleged three prior felony convictions, one of which was an offense under section 21.11, indecency with a child. Thus, if he were found guilty of aggravated sexual assault and both the indecency with a child enhancement allegation and one of the other enhancing allegations were found to be true, under the statute his punishment was to be fixed at life in prison.

Murray contends that the jury should have been told that he faced an "automatic" life sentence under these circumstances. He claims that the failure to advise the venire of this possible punishment resulted in a violation of his (1) equal protection rights because the jury in a capital murder prosecution when the death penalty is not sought is told that the defendant will be assessed an *automatic* life sentence if he is convicted; (2) right to effective assistance of counsel because his attorney could not engage in adequate voir dire, intelligently exercise his peremptory strikes, nor raise proper challenges for cause when the jury did not know of this

punishment; and (3) due process and due course of law rights because the trial court's explanation of the applicable law during its general voir dire of the venire was incorrect as it failed to tell the jury panel of this punishment.

Prior to beginning voir dire, the court discussed the range of punishment with Murray's and the State's attorneys. After establishing that Murray would be subject to the mandatory life sentence if he were convicted of aggravated sexual assault and the proper enhancing allegations were found true, the court advised the parties of how it intended to instruct the venire panel:

THE COURT: What I am going to do is instruct them on the range of punishment that it—may be certain instances that could be given to ninety-nine years or life with a ten thousand dollar fine. Or in another instance it might be from twenty-five to ninety-nine years or life. I am not—since the other is automatic, I am not going to—Do you have any objections?

[Murray's Attorney]: I have no objection to that instruction.

The court advised Murray that it did not intend to tell the jury that he would be subject to a mandatory life sentence if certain prerequisites were met. Murray affirmatively told the court that he did not have any objections to the court's intended instructions. Thus, he has waived his equal protection, effective assistance of counsel, and due process/due course of law complaints. Tex.R.App. P. 33.1(a); *Cockrell v. State,* 933 S.W.2d 73, 91 (Tex.Crim.App.1996); *Webb v. State,* 899 S.W.2d 814, 817–18 (Tex.App.—Waco 1995, pet. ref'd).[3]

---

3. We distinguish between claims of ineffective assistance of counsel based on action/inaction by the attorney herself and those based on an action by the trial court which prevented the defense attorney from effectively performing her job. *See Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674 (1984) (distinguishing between situation where the action of the attorney

deprives a defendant of "adequate legal assistance" and where an action of the government interferes with an attorney's ability to render effective assistance); *see also Jackson v. State,* 992 S.W.2d 469, 476 (Tex.Crim.App. 1999) (stating that "[a] defendant cannot be deprived of the effective assistance of counsel by actions of the trial court unless those actions prevented counsel from doing some-

■ Murray's brief could be construed to raise a complaint that his trial attorney's failure to object to the lack of an instruction to the jury regarding the mandatory life sentence resulted in the attorney rendering ineffective assistance of counsel. However, this contention is equally unavailing. To prevail on an inadequate legal assistance claim, Murray must first show that his attorney's performance was deficient, *i.e.*, that his assistance fell below an objective standard of reasonableness. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App.1999). Second, assuming Murray has demonstrated deficient assistance, he must also affirmatively prove prejudice. *Id.* In other words, Murray must show a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* This two-pronged test is the benchmark for judging whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be depended on as having produced a reliable result. *Id.* at 812–13. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Id.* at 813.

thing he had the legal right to do"). In the first instance, the defendant is not required to present his complaint to the trial court before presenting it on appeal. *Robinson v. State,* 16 S.W.3d 808 (Tex.Crim.App.2000). In the second, though, it is not the representation that is deficient, but the limitation on that representation by the court that causes the problem. ·*See Strickland,* 466 U.S. at 686, 104 S.Ct. at 2063–64. The defendant is actually aggrieved by an action of the trial court and we review such a complaint, not to determine if his trial counsel was "ineffective," but to determine if the trial court erred. *Ruiz v. State,* 891 S.W.2d 302, 305–06 (Tex.App.— San Antonio 1994, pet. ref'd). Thus, a complaint that an act of the trial court deprived a defendant of effective assistance of counsel must be preserved by a contemporaneous objection before it can be raised on appeal. Tex.R.App. P. 33.1(a); *see Howard v. State,* 941 S.W.2d 102, 108 (Tex.Crim.App.1996) (ac-

■ First, there is no evidence that Murray's attorney did not make a strategic choice about whether to inform the jury of the operation of this provision. We presume that trial counsel employed sound trial strategy. *Busby v. State,* 990 S.W.2d 263, 268–69 (Tex.Crim.App.1999); *Weaver v. State,* 999 S.W.2d 913, 917 (Tex.App.— Waco 1999, no pet.). Ordinarily, that presumption cannot be overcome absent evidence in the record of the attorney's reasons for his conduct. *Busby,* 990 S.W.2d at 269. There is no evidence in the record to show why Murray's trial attorney did not push to have the jury informed about this provision. We can conceive of at least one: trial counsel may have determined that he did not want to run the risk that during the course of telling them of the operation of this law, the jury would be explicitly advised, or given information from which they could have deduced, that his client had been previously convicted of a felony, even a felony of an undisclosed nature. Without any additional information in the record, we are unable to find that Murray's counsel's performance was deficient.

■ Furthermore, Murray does not attempt to show how his attorney's failure to seek to advise the venire panel of the mandatory life sentence influenced the out-

knowledging that the right to voir dire the venire panel is included within the right to assistance of counsel and that a complaint about the limitation of voir dire must be preserved before it can be raised on appeal); *Taylor v. State,* 939 S.W.2d 148, 155 (Tex. Crim.App.1996) (holding that a defendant is required to preserve his complaint that the trial court limited the time for voir dire). Murray does not complain that his counsel failed to provide "adequate legal assistance" by his failure to push the trial court to advise the jury of the mandatory life sentence provision potentially applicable to him. Rather, he complains that the trial court erred in failing to advise the jury of the provision and one of the by-products of that error was that his counsel could not intelligently exercise his strikes and challenges for cause. Therefore, his ineffective assistance of counsel theory is also subject to procedural default.

come of his trial. He claims now that the jury might not have understood the "seriousness of [his] situation" without the information about the mandatory life sentence. However, the jury was repeatedly told during voir dire that he faced punishment of up to a life sentence. Thus, the jury was advised of the "seriousness" of the punishment which he faced if he were convicted.

Additionally, Murray waived his election of the jury to assess punishment after he was found guilty and asked that the court consider his punishment. He also pled true to all of the enhancement allegations in the indictment, triggering the mandatory life sentence provisions. Murray does not complain about the advice he received in making these decisions. Thus, we conclude that he has not shown that he is entitled to relief on his ineffective assistance of counsel claim, without prejudice, of course, to his right to seek post-conviction relief where the record can be fully developed. *Id.; Robinson*, 16 S.W.3d at 813 n. 7.

### Evidentiary Rulings

Murray's last two complaints relate to two of the court's evidentiary rulings, one of which involved a witness's testimony implying that Murray had been imprisoned before and the other involving a witness whose testimony was not disclosed until less than three days before trial.

### Testimony referring to Murray's parole officer

■ He first complains that the court erred when it denied his motion for a mistrial after a witness mentioned that he had contacted Murray's parole officer when he was searching for Murray. The witness, a police officer, was testifying about his efforts to arrest Murray after he obtained an arrest warrant:

Q [by the State]: What efforts, if any, did you make to attempt to arrest him?

A: I made a lot of efforts.

Q: What?

A: I looked for him for quite awhile, making contacts at his residence, with his parole officer -

[Murray's attorney]: Objection, Your Honor -

THE COURT: Instruct the jury they will disregard the statement of the witness for any purpose whatsoever.

[Murray's attorney]: Move for mistrial, Your Honor.

THE COURT: Overrule the motion.

Murray argues that the court should have granted his motion for a mistrial because its instruction to the jury to disregard the evidence was not sufficient to cure the harm caused by the mention that he had a parole officer.

■ Generally, harm from testimony that implies that the defendant has been previously incarcerated will be cured by a prompt instruction to the jury to disregard that evidence. *Hughes v. State*, 878 S.W.2d 142, 154 (Tex.Crim.App.1992); *Tennard v. State*, 802 S.W.2d 678, 685 (Tex.Crim.App.1990). However, if "it is apparent that an objectionable event at trial is so emotionally inflammatory that curative instructions are not likely to prevent the jury being unfairly prejudiced against the defendant" a motion for mistrial should be granted. *Bauder v. State*, 921 S.W.2d 696, 698 (Tex.Crim.App.1996). Here, the officer's unembellished testimony was followed by an immediate instruction to disregard. The testimony was not so inflammatory as to suggest that the curative instruction was inadequate. *Id.* Thus, the trial court did not err in denying Murray's motion for a mistrial. *Id.; Hughes*, 878 S.W.2d at 154; *Tennard*, 802 S.W.2d at 685.

### Testimony not disclosed until three days before trial

■ Murray's second evidentiary-ruling complaint concerns testimony from a former cell mate at the McLennan County Jail. That witness, Vince York, testified that Murray confessed both offenses to him while they were cell mates. Mur-

ray's trial started on February 22, 1999, a Monday. At 6:05 p.m. on the preceding Friday, February 19, 1999, the State faxed a statement by York to Murray's attorney. In his statement, York claimed that Murray essentially confessed the offense during the time that they were in jail together. The State's attorney testified in response to Murray's motion to suppress that she had received York's statement at 5:35 p.m. on February 19, thirty minutes before she faxed it to Murray's attorney. York did not actually testify until the following Wednesday, February 24, 1999. Murray argues that the trial court should have granted his motion to suppress York's testimony because the evidence was not disclosed to him by the deadline imposed under the court's discovery order.

The ruling on Murray's discovery motion occurred at a pretrial hearing on October 16, 1998. The court first ruled upon Murray's request for production of any extraneous offense evidence the State intended to introduce, his motion for production of evidence the State intended to use at the punishment phase of his trial, and his motion for production of evidence favorable to him. The court granted the motions and set a deadline of October 23, 1998, for production of the materials requested. However, when the court considered his general motion for discovery production, and inspection of evidence, it did not set a deadline by which the State was required to respond. The only time periods specified during the discussion of the motion and the court's rulings were the requirement that the State provide Murray with any photographs, drawings, or diagrams of the crime scene "prior to trial," that the State provide criminal histories on its witnesses "prior to cross examination," and that the State provide Murray with "any deals" the State had with any testifying witness "prior to trial." Other than those stated, no deadlines were imposed by the court in connection with Murray's request that the State allow him access to the evidence it would use in its case in chief. Thus, the failure of the State to obtain the statement from York and produce it to Murray by October 23, 1998, was not a violation of the court's discovery order. *Perkins v. State,* 902 S.W.2d 88, 101 (Tex.App.—El Paso 1995, pet. ref'd); *see also Kinnamon v. State,* 791 S.W.2d 84, 92 (Tex.Crim.App.1990), *overruled on other grounds, Cook v. State,* 884 S.W.2d 485, 491 (Tex.Crim.App.1994).

Murray also contends that the production of York's statement on the Friday preceding the trial unfairly surprised him. However, to preserve his complaint that the late production of the statement resulted in unfair surprise, Murray was required to request that the court continue the trial so that he could prepare to meet the newly-disclosed evidence. *See Barnes v. State,* 876 S.W.2d 316, 328 (Tex.Crim. App.1994); *Gonzales v. State,* 4 S.W.3d 406, 416 n. 6 (Tex.App.—Waco 1999, no pet.). This he did not do. Thus, we conclude that the trial court did not err by denying Murray's motion to suppress York's testimony.

### Conclusion

Having considered and rejected each of Murray's complaints, we affirm the judgment.