NO. 07-07-0425-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

FEBRUARY 28, 2008
______________________________

TYRAN LEWIS, 

                                                                                      Appellant

v.

THE STATE OF TEXAS, 

                                                                                      Appellee
_________________________________

FROM THE 100TH DISTRICT COURT OF COLLINGSWORTH COUNTY;

NO. 2664; HON. DAVID M. MCCOY, PRESIDING
_______________________________

                                                   Memorandum Opinion
                                         _______________________________

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
          Tyran Lewis (appellant) appeals his conviction for possession of cocaine with the
intent to deliver. Via two issues, appellant contends the trial court erred by failing to grant
1) his motion for mistrial due to jury misconduct and 2) his motion for new trial based on
jury misconduct. We affirm.
Background
          Appellant pled guilty to the charged offense and a punishment hearing was held
before a jury. During deliberations on punishment, the jury sent out a note containing four
questions. The question which appellant now complains about read: “Question 4 what is
the time he [appellant] would serve if 15 years were imposed? (In other words, what is the
minimum time served?) (Good conduct time).” The trial court responded as follows: 
“[r]efer to Section 3 of the charge for all the information needed for Question 4.” That
portion of the charge contained information regarding good conduct time and parole. It
further included the following instruction: “You may consider the existence of the parole
law and good conduct time. However, you are not to consider the extent to which good
conduct time may be awarded to or forfeited by this particular defendant. You are not to
consider the manner in which the parole law may be applied to this particular defendant.” 
Moreover, there was no objection to the trial court’s response. However, appellant’s trial
counsel did move for a mistrial based on the jury’s improper consideration of “good conduct
time in their deliberation of punishment.” The trial court overruled the motion. 
          The jury assessed punishment at fifteen years in prison along with a fine and
restitution. After the trial court sentenced appellant, counsel re-urged his motion for
mistrial and indicated that he would file a motion for new trial. The trial court denied the
mistrial and advised counsel that it would consider a written motion for new trial. On
August 6, 2007, appellant filed a motion for new trial wherein he claimed he was “deprived
of a fair and impartial trial as a result of the misconduct or improper deliberation of the
jury.” It too was overruled. 
Issues One and Two: Jury Misconduct
          Appellant contends in both of his issues that the jury “improperly considered the
[a]ffect of good conduct time and . . . parole law . . .” in assessing punishment. We
overrule the issues. 
Standard of Review
          In reviewing a trial court’s denial of a motion for mistrial or for new trial, we
determine whether it abused its discretion. See Yates v. State, 171 S.W.3d 215, 220-21
(Tex. App.–Houston [1st Dist.] 2005, pet. ref'd) (there holding that the motion for mistrial
was the functional equivalent of a motion for new trial, the review of which was governed
by the standard of abused discretion); see also State v. Gonzalez, 820 S.W.2d 9, 12 (Tex.
App.–Dallas 1991), aff'd, 855 S.W.2d 692, 696 (Tex. Crim. App.1993) (en banc) (holding
that both the granting and the denying of a motion for new trial rests within the discretion
of the trial court, and appellate courts ordinarily will not reverse those decisions unless the
trial court has abused its discretion). Finally, an abuse of discretion occurs when the trial
court's decision was arbitrary or unreasonable. See State v. Read, 965 S.W.2d 74, 77
(Tex. App.–Austin 1998, no pet.). 
Analysis
          Appellant contends that the jury failed to follow the trial court’s instruction to avoid
considering good conduct time or parole. This was evidenced, according to appellant, by
the mere fact that the jury sent the note described above. 
          An appellate court may presume the jury will follow an instruction as given. Luquis
v. State, 72 S.W.3d 355, 366-67 (Tex. Crim. App. 2002); see also Williams v. State, 937
S.W.2d 479, 490 (Tex. Crim. App. 1996) (stating that "we assume that the jury would follow
the instruction as given, and we will not reverse in the absence of evidence that the jury
was actually confused by the charge"). Next, while the jury asked about good time and
parole in its note, that alone is not enough to rebut the presumption that it followed the trial
court’s directive and the instruction in the charge. See Colburn v. State, 966 S.W.2d 511,
520 (Tex. Crim. App.1998) (holding that “[e]ven if the note constitutes evidence the jury
discussed parole at a preliminary point, we presume they followed the court’s instructions
and thereafter did not consider it in reaching their verdict”); Graham v. State, 96 S.W.3d
658, 661 (Tex. App.–Texarkana 2003, pet. ref'd) (holding a question in a jury note alone
is insufficient to rebut the presumption that jurors followed the instruction to not consider
parole in its deliberations). Moreover, appellant does not cite us to any evidence other
than the note to support his argument that the jury ultimately failed to heed the trial court’s
instruction. 
          Accordingly, we overrule the issues and affirm the judgment.
 
                                                                           Brian Quinn
                                                                          Chief Justice

Do not publish.


 



minating
response. Innis, 446 U.S. at 301 n.7. See also Wilkerson v. State, 173 S.W.3d 521, 528-30 (Tex.Crim.App. 2005) (discussing application of Miranda and art. 38.22 to questions by
state agent not participating in criminal investigation). The jailer in Webb placed himself
into the law enforcement role by admitting he "saw his own role as one of helping in the
FBI's investigation in whatever way he could," and by informing investigators of the
defendant's statement. 755 F.2d at 389. The circumstances of appellant's statements in
the waiting room of the clinic and Wilson's failure to record the statement or report it to
investigators or the prosecutor further indicate he had no intent to act in an investigative
capacity. The record supports a finding appellant's statement was not the result of
interrogation. We overrule appellant's first and third points of error. 

 Appellant's second point asserts admission of the statement violated his Sixth
Amendment right to counsel. Protection of that right prohibits police from eliciting
incriminating statements from a defendant concerning the pending charge after the
defendant's right to counsel attaches, which occurs on commencement of adversarial
proceedings. Fellers v. U.S., 540 U.S. 519, 523, 124 S.Ct. 1019, 157 L.Ed.2d 1016 (2004); 
Kirby v. Illinois, 406 U.S. 682, 688-90, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Custody of
a defendant is not necessary to a Sixth Amendment violation. Innis, 446 U.S. at 300. 

 Appellant relies on the argument advanced under his first point to establish Wilson's
conduct was designed to elicit incriminating statements in violation of his Sixth Amendment
right to counsel. The State's brief contains no discussion of appellant's Sixth Amendment
claim. We initially note the Sixth Amendment right to counsel is offense-specific. Texas
v. Cobb, 532 U.S. 162, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001); Romo v. State, 132
S.W.3d 2, 3 (Tex.App.-Amarillo 2003, no pet.). Even if Wilson's conversation with
appellant were reasonably likely to elicit an incriminating statement, it concerned the
charge of intoxication manslaughter. Admission of that evidence in his trial for aggravated
assault, for which he apparently had not yet been indicted, (6) would not be barred under the
Sixth Amendment. Id. Moreover, for the reasons discussed, the record supports a
conclusion that Wilson's questions to appellant were not designed or reasonably likely to
elicit incriminating information. We overrule appellant's third point.

 Appellant's fourth point of error complains of the State's failure to timely disclose his
statement to the defense. He argues evidence of the statement should have been
excluded because it was not disclosed to defense counsel until the second day of trial in
violation of a pretrial order issued under article 39.14 of the Code of Criminal Procedure
(Vernon 2005). The trial court order required disclosure of, inter alia, "all oral confessions,
admissions and statements made by Defendant to the state in connection with this case,
which were not electronically recorded[,] offense reports, police reports [and] reports of
third parties . . . involving the alleged facts of the offense." 

 Article 39.14(a) authorizes a trial court to order the State to produce documents,
written statements of the defendant and tangible objects under the control of the State
which are relevant to the action. Tex. Code Crim. Proc. Ann. art. 39.14(a) (Vernon 2005). 
An order under that article "shall specify the time, place and manner of making the
inspection[.]" Id.; Kinnamon v. State, 791 S.W.2d 84, 92 (Tex.Crim.App. 1990), overruled
on other grounds, Cook v. State, 884 S.W.2d 485 (Tex.Crim.App. 1994). 

 Appellant's motion did not ask the trial court to set a time for production and the
court did not do so. See Kinnamon, 791 S.W.2d at 92 (court does not err in failing to set
date when there is no request). The record shows Wilson's statement concerning the
event was provided to defense counsel the Friday before trial. In the absence of a
deadline set by the court, disclosure on the eve of trial has been found timely. Kirksey v.
State, 132 S.W.3d 49, 54 (Tex.App.-Beaumont 2004, no pet.), citing Murray v. State, 24
S.W.3d 881, 893 (Tex.App.-Waco 2000, no pet.). The facts here are indistinguishable
from those of Murray. There the prosecutor received a witness statement at 5:35 p.m. on
the Friday before trial. Id. at 893. She forwarded the statement to defense counsel thirty
minutes later. The trial started the following Monday and the witness was called on
Wednesday. Id. The Waco Court of Appeals found no violation of the discovery order and
affirmed. Id. Finding that holding dispositive, we overrule appellant's fourth point.

 Appellant's next three points challenge the admission of expert witness testimony
concerning the presence of a cocaine metabolite in his blood and the effect of cocaine
withdrawal. He argues the evidence was admitted in violation of Rules of Evidence 401 (7)
(point five), 702 (point six), and 403 (point seven). The disputed evidence was the
testimony of Department of Public Safety chemist Kathy Erwin, who analyzed the blood
collected from appellant. She found it contained .36 milligrams per liter of benzoylecgonine.
This chemical is produced when the body metabolizes cocaine. Benzoylecgonine has no
effect on the body but indicates cocaine had been present. According to Erwin the
presence of benzoylecgonine does not indicate how or when the cocaine was ingested. (8) 
Erwin went on to testify that cocaine is a potent stimulant which can lead to a "crash phase"
or "crash effect" during withdrawal where the user can experience fatigue and sleepiness
and a general lack of energy. (9) The effect can exist even when the cocaine is no longer
present. 

 Erwin was not asked for an opinion whether appellant had experienced cocaine
crash or withdrawal. Except for her identification of appellant's blood sample and her
recitation of the procedures utilized in the DPS lab and results of her analysis, Erwin's
testimony was not related directly to appellant. 

 The defense presented expert testimony from toxicologist James Booker. His
testimony was consistent with that of Erwin on the source of benzoylecgonine and the
general scientific recognition of a cocaine crash or cocaine withdrawal. He agreed that
effect can last from several hours to several days, but opined an occasional user of small
amounts of cocaine would not suffer a withdrawal effect. When asked what information
was needed to determine the effect of a drug on a person, he replied that for cocaine it
would require information on when it was used, how much was used and the means by
which it was administered, adding that information was not available in this case. 

 Following the plain language of Rule 401, appellant argues by his fifth point Erwin's
testimony did not have any tendency to make a fact of consequence to the determination
of the action more or less probable because it did "not establish that he was under the
influence of cocaine when he struck the decedent." This argument misapprehends the
State's theory at trial and the purpose of Erwin's testimony. It was not the State's theory
that appellant was under the influence of cocaine at the time of the collision, but that he
was fatigued and sleepy because he was suffering withdrawal from cocaine. This theory
was within the indictment allegation that appellant operated a motor vehicle "without
sufficient sleep, as a result of the introduction of cocaine into his body[.]" (10) Erwin's
testimony was relevant because it established scientific acceptance of the effects of
cocaine withdrawal. It also showed appellant had consumed cocaine in the recent past. 
That the testimony did not establish when the cocaine was consumed or conclusively
establish appellant experienced cocaine withdrawal at the time of the collision did not make
it inadmissible. As the Court of Criminal Appeals has explained, the insufficiency of a
particular item of evidence, standing alone, to prove a fact does not make it inadmissible. 
Manning, 114 S.W.3d at 927. We overrule appellant's fifth point.

 In his sixth point appellant challenges admission of Erwin's testimony because the
State failed to establish the reliability of that testimony. When a party offers testimony of
an expert witness, it is the trial court's responsibility to determine if the evidence is
sufficiently reliable to assist the jury. Sexton v. State, 93 S.W.3d 96, 99 (Tex.Crim.App.
2002). Appellant argues the State "failed to shoulder its burden of showing that [E]rwin's
technique applying the cocaine crash theory was valid and that the technique had been
properly applied in this case." As noted, however, Erwin's testimony did not apply the
cocaine crash theory to appellant. Before the jury, she was not asked if appellant had
experienced cocaine crash or withdrawal. (11) 

 The State showed Erwin had bachelor's and master's degrees in chemistry, had
taken additional graduate courses in forensic toxicology and had over 20 years experience
in the field of chemistry, with five of those in the DPS crime laboratory. She also identified
literature reporting studies on the effects of cocaine use. Appellant presents no challenge
to the reliability of Erwin's testimony about her analysis of his blood, that concerning the
metabolite benzoylecgonine, or that describing the effects on the body of cocaine use and
cocaine withdrawal. His challenge is to testimony that Erwin did not give. We overrule
appellant's sixth point. 

 In his final point of error appellant argues that even if the evidence of the presence
of benzoylecgonine was relevant, it should have been excluded because the probative
value was substantially outweighed by the danger of unfair prejudice. See Tex. R. Evid.
403. In reviewing an objection to evidence under Rule 403, a court should consider, but
is not limited to, the following factors: (1) the probative value of the evidence; (2) the
potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to
develop the evidence; and (4) the proponent's need for the evidence. Prible v. State, 175
S.W.3d 724, 733 (Tex.Crim.App. 2005); Manning, 114 S.W.3d at 926. Appellant's
argument reiterates the contentions regarding relevancy urged in support of his fifth point.
His argument challenges the Court of Criminal Appeals' analysis of similar evidence in
Manning, and its conclusion the failure to exclude such evidence under Rule 403 was not
error. We find the analysis and holding in Manning dispositive and overrule appellant's
seventh point. 

 Having overruled appellant's points of error, we affirm the trial court's judgment.


 James T. Campbell

 Justice






Do not publish.


1. Disposition of the manslaughter charge is not shown in this record.
2. A defense expert testified that no conclusion could be drawn about when 
appellant consumed cocaine based on the analysis of his blood. 
3. At the time of appellant's trial Cantrell had discharged his sentence and testified
he was not subject to probation, parole or pending charges. 
4. During defense counsel's voir dire examination of Wilson, he described the context
of appellant's statements in the waiting room, stating, "He wasn't talking to me in general.
He was speaking out loud to, basically, anybody that would listen to him. There was
another inmate in the room at that time and I think the nurses were around as well." 
5. Questioned during his voir dire examination about his reaction to appellant's
statements, Wilson testified, "Whenever he made that statement it - I didn't know what
effect it would have on the case or I didn't know what kind of evidence they had or anything
like that. A lot of times they may talk about their cases out loud." 
6. Appellant's indictment for aggravated assault appearing in the appellate record is
dated in January 2004, after his November 2003 conversation with deputy Wilson. Wilson
and Brian Cantrell testified appellant's statement during that conversation was to the effect
he had been indicted for "intoxicated manslaughter." Nothing in the record makes clear
whether appellant's earlier indictment included the aggravated assault charge.
7. Trial defense counsel's objection to Erwin's testimony referred to Rule 401, which
defines relevant evidence. It is Rule of Evidence 402 that makes evidence which is not
relevant inadmissible. 
8. Appellant's expert testified benzoylecgonine is normally present for two or three
days, but that some reported cases found detectible amounts after two or three weeks in
chronic cocaine users. 
9. She said that among its effects, cocaine "keeps you awake." 
10. Because the use of cocaine was alleged in the indictment, evidence of that use
was not an extraneous offense. Manning v. State, 114 S.W.3d 922, 927 (Tex.Crim.App.
2003).
11. Erwin was not directly asked if appellant had used cocaine. She testified
appellant's blood sample contained the metabolite benzoylecgonine and that
benzoylecgonine is produced in the body only following cocaine use. She agreed with the
prosecutor that, from the presence of benzoylecgonine in a person's body, she could tell
that cocaine "was used."