COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-07-374-CR

 

 

ENEDINA PEREZ                                                                  APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








A jury convicted Appellant
Enedina Perez of aggravated sexual assault of a minor, indecency with a child
by contacting the child=s genitals,
and indecency with a child by causing the child to contact Appellant=s breasts.  In four points,
Appellant argues that the evidence is legally and factually insufficient to
support her convictions and that the trial court erred by admitting hearsay
testimony concerning another alleged sexual assault at guilt-innocence.  We affirm. 


                                            Background

Maria G.Cthe mother of the complainant, ASuzy@ (a
pseudonym)Ctestified
that she hired Appellant as a full-time live-in nanny and housekeeper in 1996
when Maria was pregnant with Suzy.  After
Suzy=s birth, Appellant looked after her and Maria=s other children, living with the family during the week and returning
to her own home on the weekends. Appellant shared a bedroom with Suzy, and the
two slept in the same bed. Suzy spent some weekends with Appellant at Appellant=s home.  Maria testified that
one night, she walked into Suzy=s bedroom, where Suzy and Appellant were in bed together.  She saw Appellant=s hand under the sheet near Suzy=s genitals, and Appellant quickly moved her hand.  Maria asked what was going on, and Appellant
responded, A[W]hy would
I want to be doing that stuff to [Suzy]? 
That=s what men
are for.@  Although the incident made
Maria suspicious, she did nothing further about it.  Maria testified that there was a time when
Suzy complained about redness in her genital area, which Maria attributed to
Suzy=s failing to wipe herself from front to back, and Maria told Suzy to
ask Appellant to apply cornstarch to the affected area. 








Angelina Bowen, a counselor
at Suzy=s school, testified that Suzy made an outcry statement to her after
watching a APlay It Safe@ video, which instructs children on the difference between appropriate
and inappropriate touching, in February 2006. 
Bowen said that Suzy came to her office after the presentation and,
crying, told her that Aher
babysitter had been touching her in her . . . lower privates and her
upper privates.@  Bowen said that Suzy told her that Appellant
forced Suzy to dress in front of her and touched her genitals when Suzy
showered and that the abuse Awas continuous,  . . .
was repetitive.@  Suzy told Bowen that she was afraid Appellant
was going to lock her in her room and hit her if she found out that Suzy had
made an outcry.  








Suzy testified that when she
was in pre-k, kindergarten, first grade, or second grade, Appellant began
touching her on her upper and lower body, in her Aprivate part@ and on her
chest.  Suzy said Appellant put her hands
inside Suzy=s clothes
and her fingers into her Aprivate
part.@  When asked whether Appellant
went Ainside the hole@ in her Aprivate parts,@ Suzy said, ALike B she did,
but like not all the way, but just like half.@  She also said that Appellant
rubbed Suzy=s breasts in
a circular motion both over and under Suzy=s clothes. Suzy testified that Appellant touched her in these manners
many times and in different locations, including in a car while stopped at red
lights.  She said she did not tell her
mother A[b]ecause I knew I was going to get in trouble if I said anything@ and because Appellant Asaid . . . she=ll go get my mom, and she would do something to her, like hit her or
something.@  On one occasion, Suzy told Appellant to stop
what she was doing, and Appellant got mad and later hit her with a belt.  Suzy said that the touching continued until
she told Bowen, which was when Suzy was in the fourth grade. 

Dr. Judy Werner, Suzy=s family physician, testified that she examined Suzy the day after
Suzy made her outcry statement.  She
testified that Suzy=s groin was
reddened and swollen from her labia back to her anus.  She attempted to determine whether Suzy=s hymen was intact, but Suzy=s labia were so swollen and painful that she could not do so.  On cross-examination, Dr. Werner said that
Suzy=s swelling and redness could be consistent with not wiping properly
after urination and then scratching to relieve the itch.   

Donna Wright, a pediatric
nurse practitioner with the Cook Children=s Medical Center C.A.R.E. team, interviewed Suzy and performed a
sexual assault exam.  Wright testified
that she determined from interviewing Suzy that Appellant had penetrated Suzy=s sexual organ with Appellant=s finger.  She said that Suzy
had some redness around her genitals but that she attached no significance to
it because there are many possible causes for such redness, such as not wiping
well, sweating, or skin rubbing together.  









The defense presented the
testimony of six witnesses; five are Appellant=s relatives, and the sixth is Suzy=s father.  They all testified
that they had never seen Appellant behave inappropriately with Suzy. 

The jury found Appellant
guilty on all three counts and assessed punishment at thirty years= confinement for the aggravated sexual assault count and ten years= confinement for each indecency count, and the trial court rendered
judgment accordingly.

Legal and Factual Sufficiency








In her first three points,
Appellant challenges the legal and factual sufficiency of the evidence to
support the her convictions.  When
reviewing the legal sufficiency of the evidence to support a conviction, we
view all the evidence in the light most favorable to the prosecution in order
to determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007).  When reviewing
the factual sufficiency of the evidence to support a conviction, we view all
the evidence in a neutral light, favoring neither party.  Neal v. State, 256 S.W.3d 264, 275
(Tex. Crim. App. 2008); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim.
App. 2006).  We then ask whether the
evidence supporting the conviction, although legally sufficient, is
nevertheless so weak that the factfinder=s determination is clearly wrong and manifestly unjust or whether
conflicting evidence so greatly outweighs the evidence supporting the
conviction that the factfinder=s determination is manifestly unjust. 
Lancon v. State, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); Watson,
204 S.W.3d at 414B15, 417.

1.               
Penetration

In her first point, Appellant
argues that the evidence is legally and factually insufficient to prove that
she penetrated Suzy=s sexual
organ in connection with her conviction for aggravated sexual assault.  She argues that Suzy was too young at the
time of the alleged assault to understand the difference between touching and
penetration and that there was no physical evidence of penetration. 








A person commits the offense
of aggravated sexual assault if the person intentionally or knowingly causes
the penetration of the anus or sexual organ of a child by any means.  Tex. Penal Code Ann. ' 22.021(a)(1)(B) (Vernon Supp. 2008).  Penetration occurs when the contact is more
intrusive than contact with the outer labia of the female sexual organ.  Vernon v. State, 841 S.W.2d 407, 409
(Tex. Crim. App. 1992) (holding that slightest penetration of female sexual
organ is sufficient to prove penetration even though vagina is not
entered).  Courts give wide latitude to
testimony given by a child victim of sexual abuse.  See Villalon v. State, 791 S.W.2d 130,
134 (Tex. Crim. App. 1990).  The victim=s description of what happened to her need not be precise, and she is
not expected to express herself at the same level of sophistication as an
adult.  See id.  There is no requirement that the victim=s testimony be corroborated by medical or physical evidence.  Garcia v. State, 563 S.W.2d 925, 928
(Tex. Crim. App. 1978); Kemple v. State, 725 S.W.2d 483, 485 (Tex. App.CCorpus Christi 1987, no pet.). 

Concerning penetration, Suzy
testified as follows:

Q.  [By the prosecutor] . . . [L]et=s
talk just a little bit about your private part, okay?

 

A.  Okay.

 

Q.  Will you agree with me that a girl=s
private part looks kind of like two fingers put together?

 

A.  Yes.  

 

Q.  When [Appellant] would touch your private
part with her hand or her finger, did she touch just on top of these two parts
or did she go in between these two parts?

 

A.  She did both. 
She would rub and she would go inside.

 

Q.  Okay. 
Now, when you go inside the two privateCor
the two parts, there=s a
hole underneath there, right?

 

A.  Yes.

 

Q.  Did she go inside that hole or not?

 








A.  LikeCshe did, but not all the way,
but just like half, and so it would kind of hurt.

 

Q.  Okay. 
And you=re
making kind of a circle with your fingers when you put it in between my two
fingers?

 

A.  Yes.

 

Q.  So did she do that when she was touching your
private part?  Did her fingers make a
little circle?

 

A.  Yes.

 

Q.  Or something different?

 

A.  Like she had herCwhenever
she went in the hole, she gotCone finger was doing the
circle, but whenever she would touch my private part, like not in, but right
thereC 

 

Q.  On top of the two parts?

 

A.  Yes. She would justCshe
got all like three and just rubbed.

 

Q.  She would rub with three fingers?

 

A.  Yes.

 

Q.  Okay. 
And you said it would kind of hurt when she went inside?

 

A.  Yes. 

 

This is some evidence from which a rational jury
could conclude that Appellant penetrated Suzy=s sexual organ.








Appellant points to Suzy=s testimony that Appellant would sometimes rub her sexual organ
through her clothing to suggest that Suzy was confused about penetration, but a
more reasonable interpretation of her overall testimony is that Appellant would
sometimes rub her genitals through her clothing and other times penetrate her
sexual organ with her fingers.  Appellant
also points to Maria=s testimony
that she instructed Appellant to apply cornstarch to Suzy=s groin as evidence raising the defense of medical treatment.  See Tex. Penal Code Ann. '' 22.011(d) (Vernon Supp. 2008), 22.021(d).  But even if Appellant touched Suzy=s sexual organ for the purpose of applying cornstarch, Maria=s testimony does not explain Suzy=s testimony that Appellant touched her Ainside the hole,@ i.e.,
penetrated her sexual organ.

Appellant further highlights
the fact that Dr. Werner found no evidence of penetration, but Dr. Werner also
testified that she would not expect to see any such evidence because a child=s sexual organ heals quickly and because of the amount of time that
elapsed between the alleged assault and Dr. Werner=s examination.  Further, as we
noted above, a victim=s testimony
need not be corroborated by physical or medical evidence.  Garcia, 563 S.W.2d at 928; Kemple,
725 S.W.2d at 485. 








Considering the evidence of
penetration in the light most favorable to the jury=s verdict, we hold that a rational trier of fact could have found
beyond a reasonable doubt that Appellant penetrated Suzy=s sexual organ.  Thus, the
evidence is legally sufficient.  See
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d
at 778.  Considering the evidence in a
neutral light, we hold that it is also factually sufficient.  See Neal, 256 S.W.3d at 275; Watson,
204 S.W.3d at 414.  Therefore, we
overrule Appellant=s first
point.

2.               
Intent to arouse or gratify
sexual desire

In her second and third
points, Appellant argues that the evidence is legally and factually
insufficient in connection with her convictions for the two indecency counts to
show that she touched Suzy=s genitals and caused Suzy to touch Appellant=s breasts with the intent to arouse and gratify any person=s sexual desire.  She also
argues that Maria=s testimony
that she instructed Appellant to apply cornstarch to Suzy=s groin Anegates a
sexualized intent.@  

A person commits the offense
of indecency with a child by contact if the person engages in sexual contact
with the child or causes the child to engage in sexual contact.  Tex. Penal Code Ann. ' 21.11(a)(1) (Vernon 2003). 
ASexual contact@ means, if
committed with the intent to arouse or gratify the sexual desire of any person,
any touching by a person, including touching through clothing, of the anus,
breast, or any part of the genitals of a child or any touching of any part of
the body of a child, including touching through clothing, with the anus,
breast, or any part of the genitals of a person.  Id. ' 21.11(c). 








The specific intent to arouse
or gratify the sexual desire of a person can be inferred from a defendant=s conduct, remarks, or all the surrounding circumstances.  McKenzie v. State, 617 S.W.2d 211, 216
(Tex. Crim. App. [Panel Op.] 1981).  Oral
expressions of intent are not required; rather, a defendant=s conduct alone is sufficient to infer intent.  Tyler v. State, 950 S.W.2d 787, 789
(Tex. App.CFort Worth
1997, no pet.).  

Suzy testified that Appellant
made her touch Appellant=s
breasts.  She said that she was massaging
Appellant=s shoulders
and Appellant moved her hand onto Appellant=s breast and told Suzy to massage Aright there.@  Wright testified that Suzy told her that
Appellant said Ait felt good@ when Suzy touched Appellant=s breast. 

Suzy also testified that when
Appellant was touching her, Ashe would sometimes say the F word and the S word@ in Spanish.  Dr. Werner
testified that Suzy told her that Appellant Aused the word pussy, and she said that when she was rubbing [Suzy]
underneath her panties, she would say, quote, fuck, end quote.  And she would also look at [Suzy], smile, and
then in Spanish would say, quote, soft and smooth, end quote.@  Further, Suzy testified that
Appellant told her that if she did not allow Appellant to touch her or if Suzy
told anyone, Appellant would Aget@ Suzy=s mother and Ado something
to her, like hit her or something.@ 








Although the jury could infer
Appellant=s intent to
arouse or gratify sexual desire from the touching itself, see id.
at 789, the foregoing evidence also supports that finding.  Suzy=s testimony about Appellant=s moaning when she made Suzy touch her breasts and uttering words of a
crude sexual nature when touching Suzy=s genitals are circumstances tending to show that Appellant viewed the
incidents as sexual encounters.  See McKenzie,
617 S.W.2d at 216; Murray v. State, 24 S.W.3d 881, 886B87 (Tex. App.CWaco 2000,
pet. ref=d) (holding defendant=s use of the word Apussy@ in
reference to indecent contact reasonably implied that he viewed the incident as
a sexual encounter).  Further, a
defendant=s
instruction to a child victim not to reveal the event to anyone shows a
consciousness of wrongdoing, which in turn leads to an inference that when the
defendant touched the victim, the defendant harbored a specific intent to arouse
and gratify the defendant=s own sexual
desire.  Montgomery v. State, 810
S.W.2d 372, 396 (Tex. Crim. App. 1991) (op. on reh=g).

With regard to Appellant=s argument that Maria=s instructing her to apply cornstarch to Suzy=s groin negates specific sexualized intent, we have already noted that
even if Appellant touched Suzy=s genitals for that purpose, it does not excuse her from the other
acts of which Suzy complains; those acts include causing Suzy to touch
Appellant=s breasts
and rubbing Suzy=s genitals
while uttering the statements set forth above.








We hold that the evidence is
both legally and factually sufficient to support the jury=s implied finding that Appellant intended to arouse or gratify a
person=s sexual desire when she caused Suzy to touch her breasts and when she
touched Suzy=s genitals,
and we overrule Appellant=s second and
third points.

3.                 
Extraneous offense evidence

In her fourth point, Appellant argues that the
trial court committed structural, constitutional error by allowing Maria to
testify that Suzy=s
brother, Bob (a pseudonym), had recently told her that Appellant had abused
him, too. Appellant did not object to this testimony at trial, and she concedes
that treating the error as a constitutional, structural error is Aan admittedly novel concept.@ 
The testimony in question is as follows:

(Conference
at the bench.)

 

[PROSECUTOR]: 
Judge, I believe at this time, the defense has opened the door to sexual
abuse of [Bob] as well.

 

[DEFENSE COUNSEL]: That=s
fine.

 

THE COURT: Okay.

 

(End of bench conference.)

 

Q.
[By the prosecutor] Maria, did you find out that [Suzy] was not the only abusedCor sexual abuse victim of your
children?

 

A.  Yes, I did.

 

Q.  Who was the other victim?

 

A.  My son, [Bob].  








. . . .

 

Q.  And, briefly, how did you find out about
that?

 

A.  I had brought my children to get interviewed
because we were supposed to go to trial on this matter in July.

 

Q.  Did he tell you about it at that time?

 

A.  I found out when I was told that we couldn=t proceed.  I could not handle it, two children.

 

Q.  Do you know, as a parent, why [Bob] had
remained quiet about it?

 

A.  [Appellant] had threatened him that something
was going to happen to us.

 

[DEFENSE COUNSEL]: Your Honor, I=m going to object.  That=s
nonresponsive and that also calls for hearsay.

 

[PROSECUTOR]: Without getting into the threatC 

 

THE COURT: I=ll
sustain that as to anything further.

 

Q.
[By the prosecutor]   Cdo you knowC


 

[PROSECUTOR]: Actually, Your Honor, I pass the witness.


 








To preserve a complaint for
our review, a party must have presented to the trial court a timely request,
objection, or motion that states the specific grounds for the desired ruling if
they are not apparent from the context of the request, objection, or
motion.  Tex. R. App. P. 33.1(a)(1); Mosley
v. State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh=g), cert. denied, 526 U.S. 1070 (1999).  Further, the trial court must have ruled on
the request, objection, or motion, either expressly or implicitly, or the
complaining party must have objected to the trial court=s refusal to rule.  Tex. R. App.
P. 33.1(a)(2); Mendez v. State,
138 S.W.3d 334, 341 (Tex. Crim. App. 2004).








Except for complaints
involving systemic (or absolute) requirements, or rights that are waivable
only, all other complaints, whether constitutional, statutory, or otherwise,
are forfeited by failure to comply with rule 33.1(a).  Mendez, 138 S.W.3d at 342.  Systemic requirements include jurisdiction of
the person and subject matter, a penal statute=s being in compliance with the separation of powers section of the
state constitution, a constitutional requirement that a district court conduct
its proceedings at the county seat, the constitutional prohibition against ex
post facto laws, and certain constitutional restraints on a judge=s comments.  Saldano v. State,
70 S.W.3d 873, 888B89 (Tex.
Crim. App. 2002).  Constitutional error
that is Astructural@ and
therefore not subject to a harm analysis also seems to fall into this
category.  See Mendez, 138 S.W.3d
at 339B40.  The very limited class of
structural, constitutional errors includes the total deprivation of counsel at
trial, lack of an impartial trial judge, the unlawful exclusion of members of
the defendant=s race from
a grand jury, the denial of the right to self‑representation at trial,
the denial of the right to a public trial, and an instruction that erroneously
lowers the burden of proof for conviction below the Abeyond a reasonable doubt@ standard.  Johnson v. State,
169 S.W.3d 223, 235 (Tex. Crim. App. 2005) (citing Johnson v. U.S., 520
U.S. 461, 468B69, 117 S.
Ct. 1544, 1549B50 (1997)).

The error Appellant alleges
on appealCthe
admission of hearsay evidence of an extraneous offenseCdoes not fall within the parameters of systemic error or structural,
constitutional error.  Therefore,
Appellant had the obligation to object to the evidence at trial.  See Tex. R. App. P. 33.1(a)(1); Mosley,
983 S.W.2d at 265.  Because Appellant
failed to object, she forfeited the alleged error, and we overrule her fourth
point.

                                             Conclusion

Having overruled all of
Appellant=s points, we
affirm the trial court=s judgment.

 

ANNE GARDNER

JUSTICE

 

PANEL:
CAYCE, C.J.; LIVINGSTON and GARDNER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  January 22, 2009











[1]See Tex.
R. App. P. 47.4.