

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-374-CR

ENEDINA PEREZ                                                          APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

A jury convicted Appellant Enedina Perez of aggravated sexual assault of a minor, indecency with a child by contacting the child's genitals, and indecency with a child by causing the child to contact Appellant's breasts. In four points, Appellant argues that the evidence is legally and factually insufficient to support her convictions and that the trial court erred by admitting

---

[1] *See* Tex. R. App. P. 47.4.

hearsay testimony concerning another alleged sexual assault at guilt-innocence. We affirm.

**Background**

Maria G.—the mother of the complainant, "Suzy" (a pseudonym)—testified that she hired Appellant as a full-time live-in nanny and housekeeper in 1996 when Maria was pregnant with Suzy. After Suzy's birth, Appellant looked after her and Maria's other children, living with the family during the week and returning to her own home on the weekends. Appellant shared a bedroom with Suzy, and the two slept in the same bed. Suzy spent some weekends with Appellant at Appellant's home. Maria testified that one night, she walked into Suzy's bedroom, where Suzy and Appellant were in bed together. She saw Appellant's hand under the sheet near Suzy's genitals, and Appellant quickly moved her hand. Maria asked what was going on, and Appellant responded, "[W]hy would I want to be doing that stuff to [Suzy]? That's what men are for." Although the incident made Maria suspicious, she did nothing further about it. Maria testified that there was a time when Suzy complained about redness in her genital area, which Maria attributed to Suzy's failing to wipe herself from front to back, and Maria told Suzy to ask Appellant to apply cornstarch to the affected area.

Angelina Bowen, a counselor at Suzy's school, testified that Suzy made an outcry statement to her after watching a "Play It Safe" video, which instructs children on the difference between appropriate and inappropriate touching, in February 2006. Bowen said that Suzy came to her office after the presentation and, crying, told her that "her babysitter had been touching her in her . . . lower privates and her upper privates." Bowen said that Suzy told her that Appellant forced Suzy to dress in front of her and touched her genitals when Suzy showered and that the abuse "was continuous, . . . was repetitive." Suzy told Bowen that she was afraid Appellant was going to lock her in her room and hit her if she found out that Suzy had made an outcry.

Suzy testified that when she was in pre-k, kindergarten, first grade, or second grade, Appellant began touching her on her upper and lower body, in her "private part" and on her chest. Suzy said Appellant put her hands inside Suzy's clothes and her fingers into her "private part." When asked whether Appellant went "inside the hole" in her "private parts," Suzy said, "Like – she did, but like not all the way, but just like half." She also said that Appellant rubbed Suzy's breasts in a circular motion both over and under Suzy's clothes. Suzy testified that Appellant touched her in these manners many times and in different locations, including in a car while stopped at red lights. She said she did not tell her mother "[b]ecause I knew I was going to get in trouble if I said

3

anything" and because Appellant "said . . . she'll go get my mom, and she would do something to her, like hit her or something." On one occasion, Suzy told Appellant to stop what she was doing, and Appellant got mad and later hit her with a belt. Suzy said that the touching continued until she told Bowen, which was when Suzy was in the fourth grade.

Dr. Judy Werner, Suzy's family physician, testified that she examined Suzy the day after Suzy made her outcry statement. She testified that Suzy's groin was reddened and swollen from her labia back to her anus. She attempted to determine whether Suzy's hymen was intact, but Suzy's labia were so swollen and painful that she could not do so. On cross-examination, Dr. Werner said that Suzy's swelling and redness could be consistent with not wiping properly after urination and then scratching to relieve the itch.

Donna Wright, a pediatric nurse practitioner with the Cook Children's Medical Center C.A.R.E. team, interviewed Suzy and performed a sexual assault exam. Wright testified that she determined from interviewing Suzy that Appellant had penetrated Suzy's sexual organ with Appellant's finger. She said that Suzy had some redness around her genitals but that she attached no significance to it because there are many possible causes for such redness, such as not wiping well, sweating, or skin rubbing together.

4

The defense presented the testimony of six witnesses; five are Appellant's relatives, and the sixth is Suzy's father. They all testified that they had never seen Appellant behave inappropriately with Suzy.

The jury found Appellant guilty on all three counts and assessed punishment at thirty years' confinement for the aggravated sexual assault count and ten years' confinement for each indecency count, and the trial court rendered judgment accordingly.

## Legal and Factual Sufficiency

In her first three points, Appellant challenges the legal and factual sufficiency of the evidence to support the her convictions. When reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Neal v. State,* 256 S.W.3d 264, 275 (Tex. Crim. App. 2008); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless

so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15, 417.

**1. Penetration**

In her first point, Appellant argues that the evidence is legally and factually insufficient to prove that she penetrated Suzy's sexual organ in connection with her conviction for aggravated sexual assault. She argues that Suzy was too young at the time of the alleged assault to understand the difference between touching and penetration and that there was no physical evidence of penetration.

A person commits the offense of aggravated sexual assault if the person intentionally or knowingly causes the penetration of the anus or sexual organ of a child by any means. Tex. Penal Code Ann. § 22.021(a)(1)(B) (Vernon Supp. 2008). Penetration occurs when the contact is more intrusive than contact with the outer labia of the female sexual organ. *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992) (holding that slightest penetration of female sexual organ is sufficient to prove penetration even though vagina is not entered). Courts give wide latitude to testimony given by a child victim of

6

sexual abuse.  *See Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990).  The victim's description of what happened to her need not be precise, and she is not expected to express herself at the same level of sophistication as an adult.  *See id.*  There is no requirement that the victim's testimony be corroborated by medical or physical evidence.  *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978); *Kemple v. State*, 725 S.W.2d 483, 485 (Tex. App.—Corpus Christi 1987, no pet.).

Concerning penetration, Suzy testified as follows:

Q.  [By the prosecutor] . . . [L]et's talk just a little bit about your private part, okay?

A.  Okay.

Q.  Will you agree with me that a girl's private part looks kind of like two fingers put together?

A.  Yes.

Q.  When [Appellant] would touch your private part with her hand or her finger, did she touch just on top of these two parts or did she go in between these two parts?

A.  She did both.  She would rub and she would go inside.

Q.  Okay.  Now, when you go inside the two private—or the two parts, there's a hole underneath there, right?

A.  Yes.

Q.  Did she go inside that hole or not?

7

A. Like—she did, but not all the way, but just like half, and so it would kind of hurt.

Q. Okay. And you're making kind of a circle with your fingers when you put it in between my two fingers?

A. Yes.

Q. So did she do that when she was touching your private part? Did her fingers make a little circle?

A. Yes.

Q. Or something different?

A. Like she had her—whenever she went in the hole, she got—one finger was doing the circle, but whenever she would touch my private part, like not in, but right there—

Q. On top of the two parts?

A. Yes. She would just—she got all like three and just rubbed.

Q. She would rub with three fingers?

A. Yes.

Q. Okay. And you said it would kind of hurt when she went inside?

A. Yes.

This is some evidence from which a rational jury could conclude that Appellant penetrated Suzy's sexual organ.

Appellant points to Suzy's testimony that Appellant would sometimes rub her sexual organ through her clothing to suggest that Suzy was confused about

8

penetration, but a more reasonable interpretation of her overall testimony is that Appellant would sometimes rub her genitals through her clothing and other times penetrate her sexual organ with her fingers. Appellant also points to Maria's testimony that she instructed Appellant to apply cornstarch to Suzy's groin as evidence raising the defense of medical treatment. *See* Tex. Penal Code Ann. §§ 22.011(d) (Vernon Supp. 2008), 22.021(d). But even if Appellant touched Suzy's sexual organ for the purpose of applying cornstarch, Maria's testimony does not explain Suzy's testimony that Appellant touched her "inside the hole," i.e., penetrated her sexual organ.

Appellant further highlights the fact that Dr. Werner found no evidence of penetration, but Dr. Werner also testified that she would not expect to see any such evidence because a child's sexual organ heals quickly and because of the amount of time that elapsed between the alleged assault and Dr. Werner's examination. Further, as we noted above, a victim's testimony need not be corroborated by physical or medical evidence. *Garcia*, 563 S.W.2d at 928; *Kemple*, 725 S.W.2d at 485.

Considering the evidence of penetration in the light most favorable to the jury's verdict, we hold that a rational trier of fact could have found beyond a reasonable doubt that Appellant penetrated Suzy's sexual organ. Thus, the evidence is legally sufficient. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at

9

2789; *Clayton*, 235 S.W.3d at 778. Considering the evidence in a neutral light, we hold that it is also factually sufficient. *See Neal,* 256 S.W.3d at 275; *Watson*, 204 S.W.3d at 414. Therefore, we overrule Appellant's first point.

**2.    Intent to arouse or gratify sexual desire**

In her second and third points, Appellant argues that the evidence is legally and factually insufficient in connection with her convictions for the two indecency counts to show that she touched Suzy's genitals and caused Suzy to touch Appellant's breasts with the intent to arouse and gratify any person's sexual desire. She also argues that Maria's testimony that she instructed Appellant to apply cornstarch to Suzy's groin "negates a sexualized intent."

A person commits the offense of indecency with a child by contact if the person engages in sexual contact with the child or causes the child to engage in sexual contact. Tex. Penal Code Ann. § 21.11(a)(1) (Vernon 2003). "Sexual contact" means, if committed with the intent to arouse or gratify the sexual desire of any person, any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child or any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person. *Id*. § 21.11(c).

The specific intent to arouse or gratify the sexual desire of a person can be inferred from a defendant's conduct, remarks, or all the surrounding

10

circumstances. *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel Op.] 1981). Oral expressions of intent are not required; rather, a defendant's conduct alone is sufficient to infer intent. *Tyler v. State*, 950 S.W.2d 787, 789 (Tex. App.—Fort Worth 1997, no pet.).

Suzy testified that Appellant made her touch Appellant's breasts. She said that she was massaging Appellant's shoulders and Appellant moved her hand onto Appellant's breast and told Suzy to massage "right there." Wright testified that Suzy told her that Appellant said "it felt good" when Suzy touched Appellant's breast.

Suzy also testified that when Appellant was touching her, "she would sometimes say the F word and the S word" in Spanish. Dr. Werner testified that Suzy told her that Appellant "used the word pussy, and she said that when she was rubbing [Suzy] underneath her panties, she would say, quote, fuck, end quote. And she would also look at [Suzy], smile, and then in Spanish would say, quote, soft and smooth, end quote." Further, Suzy testified that Appellant told her that if she did not allow Appellant to touch her or if Suzy told anyone, Appellant would "get" Suzy's mother and "do something to her, like hit her or something."

Although the jury could infer Appellant's intent to arouse or gratify sexual desire from the touching itself, *see id.* at 789, the foregoing evidence also

supports that finding. Suzy's testimony about Appellant's moaning when she made Suzy touch her breasts and uttering words of a crude sexual nature when touching Suzy's genitals are circumstances tending to show that Appellant viewed the incidents as sexual encounters. *See McKenzie*, 617 S.W.2d at 216; *Murray v. State*, 24 S.W.3d 881, 886–87 (Tex. App.—Waco 2000, pet. ref'd) (holding defendant's use of the word "pussy" in reference to indecent contact reasonably implied that he viewed the incident as a sexual encounter). Further, a defendant's instruction to a child victim not to reveal the event to anyone shows a consciousness of wrongdoing, which in turn leads to an inference that when the defendant touched the victim, the defendant harbored a specific intent to arouse and gratify the defendant's own sexual desire. *Montgomery v. State*, 810 S.W.2d 372, 396 (Tex. Crim. App. 1991) (op. on reh'g).

With regard to Appellant's argument that Maria's instructing her to apply cornstarch to Suzy's groin negates specific sexualized intent, we have already noted that even if Appellant touched Suzy's genitals for that purpose, it does not excuse her from the other acts of which Suzy complains; those acts include causing Suzy to touch Appellant's breasts and rubbing Suzy's genitals while uttering the statements set forth above.

We hold that the evidence is both legally and factually sufficient to support the jury's implied finding that Appellant intended to arouse or gratify

12

a person's sexual desire when she caused Suzy to touch her breasts and when she touched Suzy's genitals, and we overrule Appellant's second and third points.

### 3.  Extraneous offense evidence

In her fourth point, Appellant argues that the trial court committed structural, constitutional error by allowing Maria to testify that Suzy's brother, Bob (a pseudonym), had recently told her that Appellant had abused him, too. Appellant did not object to this testimony at trial, and she concedes that treating the error as a constitutional, structural error is "an admittedly novel concept."  The testimony in question is as follows:

> (Conference at the bench.)

> [PROSECUTOR]:  Judge, I believe at this time, the defense has opened the door to sexual abuse of [Bob] as well.

> [DEFENSE COUNSEL]: That's fine.

> THE COURT: Okay.

> (End of bench conference.)

> Q. [By the prosecutor] Maria, did you find out that [Suzy] was not the only abused—or sexual abuse victim of your children?

> A.  Yes, I did.

> Q.  Who was the other victim?

> A.  My son, [Bob].

13

. . . .

Q.  And, briefly, how did you find out about that?

A.  I had brought my children to get interviewed because we were supposed to go to trial on this matter in July.

Q.  Did he tell you about it at that time?

A.  I found out when I was told that we couldn't proceed.  I could not handle it, two children.

Q.  Do you know, as a parent, why [Bob] had remained quiet about it?

A.  [Appellant] had threatened him that something was going to happen to us.

        [DEFENSE COUNSEL]: Your Honor, I'm going to object. That's nonresponsive and that also calls for hearsay.

        [PROSECUTOR]: Without getting into the threat—

        THE COURT: I'll sustain that as to anything further.

Q. [By the prosecutor]  —do you know—

        [PROSECUTOR]: Actually, Your Honor, I pass the witness.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  Tex. R. App. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied,* 526 U.S.

14

1070 (1999). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).

Except for complaints involving systemic (or absolute) requirements, or rights that are waivable only, all other complaints, whether constitutional, statutory, or otherwise, are forfeited by failure to comply with rule 33.1(a). *Mendez*, 138 S.W.3d at 342. Systemic requirements include jurisdiction of the person and subject matter, a penal statute's being in compliance with the separation of powers section of the state constitution, a constitutional requirement that a district court conduct its proceedings at the county seat, the constitutional prohibition against ex post facto laws, and certain constitutional restraints on a judge's comments. *Saldano v. State*, 70 S.W.3d 873, 888–89 (Tex. Crim. App. 2002). Constitutional error that is "structural" and therefore not subject to a harm analysis also seems to fall into this category. *See Mendez*, 138 S.W.3d at 339–40. The very limited class of structural, constitutional errors includes the total deprivation of counsel at trial, lack of an impartial trial judge, the unlawful exclusion of members of the defendant's race from a grand jury, the denial of the right to self-representation at trial, the denial of the right to a public trial, and an instruction that erroneously lowers the

burden of proof for conviction below the "beyond a reasonable doubt" standard. *Johnson v. State*, 169 S.W.3d 223, 235 (Tex. Crim. App. 2005) (citing *Johnson v. U.S.*, 520 U.S. 461, 468–69, 117 S. Ct. 1544, 1549–50 (1997)).

The error Appellant alleges on appeal—the admission of hearsay evidence of an extraneous offense—does not fall within the parameters of systemic error or structural, constitutional error. Therefore, Appellant had the obligation to object to the evidence at trial. *See* Tex. R. App. P. 33.1(a)(1); *Mosley*, 983 S.W.2d at 265. Because Appellant failed to object, she forfeited the alleged error, and we overrule her fourth point.

### Conclusion

Having overruled all of Appellant's points, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL: CAYCE, C.J.; LIVINGSTON and GARDNER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: January 22, 2009

16