**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00053-CR**
**NO. 09-24-00054-CR**
_____

**WHITNEY ROY COBURN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 356th District Court**
**Hardin County, Texas**
**Trial Cause Nos. 27490 and 27492**

**MEMORANDUM OPINION**

Whitney Roy Coburn was indicted in trial cause number 27490 for aggravated sexual assault of a child, a first-degree felony, and in trial cause number 27492 for indecency with a child by sexual contact, a second-degree felony. *See* Tex. Penal Code Ann. §§ 22.021 (aggravated sexual assault), 21.11 (indecency with a child). The cases were consolidated for trial and heard by the same jury. The jury convicted Coburn on both charges and assessed sentences of sixty years on the

aggravated sexual assault of a child case and twenty years on the indecency with a child by sexual contact case. The trial court ordered the sentences to run concurrently.

In trial cause number 27490, Coburn argues that the evidence is insufficient as a matter of law as to the allegations of aggravated sexual assault of a child. In trial cause number 27492, Coburn argues that the prosecution for indecency with a child by sexual contact is barred by double jeopardy. We affirm the judgments in each case.

## STANDARD OF REVIEW

### Sufficiency of the Evidence

When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency

review must not engage in a "'divide and conquer'" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232 (citation omitted). Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 318-19); *see also Hooper v. State*, 214 S.W.3d 9, 13, 16-17 (Tex. Crim. App. 2007) ("[A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them.").

We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525-26 (Tex. Crim. App. 2012). We do so because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

## Double Jeopardy

The constitutional proscription against double jeopardy provides three types of protection: 1) protection against a second prosecution for the same offense after an acquittal; 2) protection against a second prosecution for the same offense following a conviction; and 3) protection against multiple punishments for the same offense. *Garfias v. State*, 424 S.W.3d 54, 58 (Tex. Crim. App. 2014). As in *Garfias*, this case involves a claim relating to the third of these protections, multiple punishments. *See id.* The Court of Criminal Appeals has said that what constitutes the "same" offense for double jeopardy purposes in the multiple-punishments context is strictly a matter of legislative intent and the true inquiry is whether the Legislature intended to authorize the separate punishments. *Id.*; *Gonzales v. State*, 304 S.W.3d 838, 845 (Tex. Crim. App. 2010). There are two

ways in which legislative intent can be ascertained, by analyzing the elements of the offenses in question, or by identifying the appropriate "unit of prosecution" for the offenses. *Garfias*, 424 S.W.3d at 58. When determining the Legislature's intent concerning multiple punishments for different offenses defined within two distinct statutes, the offenses must be considered the same under both an "elements" analysis and a "units" analysis for a double-jeopardy violation to occur. *Ex parte Benson*, 459 S.W.3d 67, 71 (Tex. Crim. App. 2015) (citations omitted). When only one statute is at issue, the "elements" analysis is necessarily resolved in the defendant's favor, and only a "units" analysis remains to be conducted. *Id.*

In *Loving v. State*, the Court of Criminal Appeals held that "the gravamen of the indecency-with-a-child statute is the nature of the prohibited conduct, regardless of whether the accused is charged with contact or exposure." 401 S.W.3d 642, 649 (Tex. Crim. App. 2013). The Court concluded that the Legislature intended that a defendant should be susceptible to punishment for each—even when "the exposure precedes the contact[.]" *Id.* at 644, 649. "Exposure" under Section 21.11(a)(2)(A), is not "necessarily subsumed" within "sexual contact" under Section 21.11(a)(1). *Speights v. State*, No. 06-12-00137-CR, 2014 WL 1246074, at *9 (Tex. App.—Texarkana Mar. 26, 2014) (not designated for publication). For purposes of the indecency-with-a-child statute, "sexual contact" may be accomplished by way of "any touching by a person, including touching

through clothing[.]" Tex. Penal Code Ann. § 21.11(c)(1); *Loving*, 401 S.W.3d at 648.

## The Evidence

The Mother of the child, Mary, met Whitney Coburn in 2003 and they were married in 2004. They have three children together: Mary, age 19 at time of trial; Eddie, age 17 at time of trial; and Joe, age 15 at time of trial.[1] Although Coburn was also indicted for the sexual assault of Mary, that case was not joined with the two cases tried together that are the subject of these appeals. That said, Mary was called by the state to testify to show Coburn committed similar acts of sexual assault. *See* Tex. R. Evid. 413.

After several years of marriage and the filing of their second divorce action, Mother and Coburn separated permanently in 2007. Mother and Coburn followed a visitation schedule in which the children lived with her and every Saturday, from 10:00 a.m. until 6:00 p.m. they stayed with Coburn at his home. In May of 2008, Mary was three and a half years old when she outcried to Mother that "her daddy" was putting his fingers in her "front hiney," which is what she called her vagina. The next day, Mother contacted law enforcement and Child Protective Services

---

[1] We refer to the victim and her extended family members here by pseudonyms. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

("CPS") and spoke with Renae Hebert. CPS instructed Mother to take Mary to the Garth House for a forensic interview. However, Mary was very upset and unwilling to speak with the interviewer. Shortly after that, Hebert visited alone with Mary in Mother's home, but Mary did not repeat the accusations. Hebert arranged for an extended assessment by Julie Prudhome at Garth House where Mary finally opened-up to Prudhome. However, no charges were ever filed. The divorce was finalized in 2014, and Coburn's parental rights were voluntarily terminated as to the three children at the time of the final divorce.

In 2018, Mary was thirteen when she made statements to Mother that she remembered some additional details about the original allegations. Mother contacted Investigator Kendra Simmons to report the additional details, and she arranged another forensic interview at the Garth House which occurred in 2018.

Mary testified that she was nineteen years old at the time of trial and the oldest of the three Coburn children. Mary said she remembers when she was three and one-half years old and visiting at Coburn's house when Coburn put her on the bed in the bedroom, took her clothes off, and put his fingers on and inside her vagina. Mary testified Coburn also touched her breast. Mary said there were also times Coburn had her touch his penis outside of his clothes. Mary recalled seeing a camera that Coburn had set up on a tripod, and she stated that he took the camera out of a box that had what appeared to be videotape cassettes inside.

Brenda Garison testified she was the Sexual Abuse Nurse Examiner (SANE) who examined Mary in 2008. Garison stated that Mary did not identify any sexual contact had occurred during that exam. Garison said that it was not unusual for there to be no visible injuries to a three-year-old child's genital area days after an alleged incident because that area of the body heals quickly. Garison explained it was also her experience that there would be no evidence of touch DNA because going to the bathroom or bathing after the alleged incident would eliminate such DNA.

Renae Hebert was working as an Investigator for CPS in 2008 when she received a report alleging that Mary had been sexually abused. Hebert visited Mary at Mother's home a few days after the Garth House interview. When Hebert visited with Mary at Mother's home, Mary described some sexual abuse that caused Hebert to arrange another interview at the Silsbee Police Department. Hebert said that Mary did not disclose sexual abuse during the interview at the Silsbee Police Department, so she referred Mary to Prudhome to conduct an extended assessment through multiple meetings at Garth House. Hebert said at that time Mary did not make outcry of sexual abuse to Prudhome during the extended assessment so she closed her investigation as "unable to determine." However, in Hebert's final report she recommended that Coburn not have unsupervised possession of Mary due to her concerns about the outcry and Mary's interview.

Kim Hanks has worked as a forensic interviewer at Garth House since 1991. Hanks testified about the forensic interview process, the reasons for it, and further testified about her experience and knowledge of delayed outcries of sexual abuse by victims. Hanks re-interviewed Mary at Garth House in 2018, when Mary was thirteen years old, and Mary told her she remembered sexual abuse that occurred when she was three years old.

Prudhome was the lead counselor at Garth House when she conducted the extended assessment sessions with Mary in 2008. Prudhome testified that she did not see signs that Mary had been coached, and she was unable to rule out whether sexual abuse had occurred in 2008.

Shari testified that she is the mother of Carl, who is identified as the victim of the aggravated sexual assault and indecency with a child by sexual contact as alleged in the indictments in these cases.[2] Shari, who is Deanna Coburn's niece, testified that Deanna Coburn, Whitney Coburn's wife, was Carl's and his sister's babysitter from 2021 until the Fall of 2022, when she only babysat Carl. On Tuesday, September 20, 2022, when Shari picked Carl up from the Coburns' home, Carl told Shari that Uncle Whitney Coburn "hit" or "patted my butt." Shari did not

---

[2] We use pseudonyms for the names of the mother and child to protect their rights to privacy. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

think much of it until the next afternoon when she picked up Carl from the Coburns' home, and Carl told her that Uncle Whitney Coburn "stuck his finger up my butthole." A few days after that, Shari and Carl's Father noticed that Carl's behavior changed which caused Shari to contact a nurse friend and the police. Subsequently, when Shari and Carl's Father got married on October 8, 2022, Carl cried and hid when he saw Whitney Coburn at the wedding reception.

Carl's father described Carl as a very outgoing child. However, Father noticed a change in Carl's demeanor around the time of the outcry in 2022. Father became concerned after the outcry and he questioned Carl about who wiped him when he was at the Coburns' house. Based on Carl's responses, Father called the police to make a report. Then, Father and Shari accompanied Carl to Garth House for two forensic interviews and for follow-up counseling sessions. Father also accompanied Carl to the SANE exam.

Carl testified that he was five years old at the time of trial. Carl said his birthday was November 3rd and he identified his two sisters and one brother. Carl identified his penis as where he goes "pee" and his butt as where he goes "poop." When he was three years old, Carl called his penis his "ding-ding." Carl testified that Coburn touched his "ding-ding" with his hand and he motioned to the trial judge how it was done. Carl then testified that Coburn put his fingers inside Carl's

butthole, and he motioned to the trial judge how Coburn had done it and Carl testified that it didn't make him feel good.

Deanna Coburn testified that she began dating Coburn in 2009, and they were married in 2017. Deanna admitted that after the outcry, she said in a text message to Shari that Carl was the only kid that Coburn had been around who could have made an accusation of sexual abuse. However, on cross-examination Deanna testified that Coburn could not have abused Carl because Coburn was never alone with Carl on September 19, 20, and 21, 2022, as she had retraced his movements for those three days to prove it. But Deanna would not say that Carl was a liar.

Kaylee Sliger was employed as a SANE nurse at Christus St. Elizabeth Hospital in Beaumont on September 21, 2022, when she conducted an exam of Carl. Sliger said it was around 1:00 a.m. and Carl was not very responsive. Carl did not report any sexual abuse and he showed no signs of injury. But, Sliger said she only sees injuries in about ten percent of the cases. Sliger also said an anal tear from an adult finger is unlikely to occur because the adult finger is smaller than the poop that normally comes out of a child.

Jennifer Luna testified that she was working as a forensic interviewer at Garth House on October 7 and 17, 2022, when Carl was brought in for interviews. Luna had concerns about some of Carl's responses in the first interview and decided to bring him back for further questions. Luna testified that Carl described

his penis and anus being touched by Coburn by pointing to a drawing of a naked male body and showing with his hands how he was touched.

Kendra Simmons was an Investigator with the Hardin County Sheriff's Office in 2018 when she was assigned a cold case of sexual assault pending against Coburn that was alleged to have occurred in 2008 in which Mary was the victim. On April 19, 2018, Simmons sent Mary to Garth House for another forensic interview. Then, on September 21, 2022, Simmons received notice that Carl had made an outcry against Coburn. Simmons directed officers to send Carl to Garth House for a forensic interview and then followed up with a second interview. Simmons viewed the interviews and determined that Carl had made an outcry of sexual abuse in both interviews. Simmons explained Carl's outcries were consistent with what family members had reported to police. Simmons testified that there was no DNA recovered from Carl's cases but that was expected if the child had been bathed or cleaned after the incident. She agreed that there was none of Coburn's DNA left on Carl's body.

At the close of evidence, the jury was charged by the court with determining beyond a reasonable doubt if Coburn was guilty of aggravated sexual assault of a child by "intentionally or knowingly cause[ing] the penetration of the anus of [Carl], a child who was younger than six (6) years of age, by the Defendant's finger . . . ." The court further charged the jury with determining beyond a reasonable

doubt if Coburn was guilty of indecency with a child "by touching the anus or genitals of [Carl], a child younger than seventeen (17) years of age . . . as alleged in the indictment."

## ANALYSIS

### Aggravated Sexual Assault of a Child

In trial cause number 27490, Coburn was charged with aggravated sexual assault of a child under the age of seventeen by penetrating the anus of Carl with Coburn's finger. A person commits the offense of aggravated sexual assault of a child if he intentionally or knowingly causes the penetration of the anus of a child by any means and the victim is under the age of fourteen. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B)(i), (a)(2)(B). A child victim's testimony alone is sufficient to support a conviction for aggravated sexual assault. *See* Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1)); *see also MacDonald v. State*, No. 09-18-00399-CR, 2020 Tex. App. LEXIS 1850, at *10 (Tex. App.—Beaumont Mar. 4, 2020, pet. ref'd) (not designated for publication).

There was no dispute at trial or on appeal that during the period relevant to Coburn's indictments—on or about September 21, 2022—Carl was a "child" younger than fourteen. *See* Tex. Penal Code Ann. § 22.021(a)(2)(B), (b)(1) (for the offense of aggravated sexual assault, requiring victim to be younger than fourteen

and defining child as having "the meaning assigned by Section 22.011(c)"); *see also id.* § 22.011(c).

As we will address in the second issue, the offense of aggravated sexual assault of a child is a separate offense than that of indecency with a child by contact. For the offense of indecency with a child by contact, the State must prove that Coburn "engage[d] in sexual contact with [Carl] or cause[d Carl] to engage in sexual contact" with the intent to arouse or gratify the sexual desire of any person regardless of whether he knew Carl's age. *See id.* § 21.11(a)(1). Under Penal Code Section 21.11(c), "sexual contact" is defined as follows:

> "(c) In this section, 'sexual contact' means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person:
> (1) any touching by a person, including touching through the clothing, of the anus, breast, or any part of the genitals of a child…."

*Id.* § 21.11(c)(1); *see Guevara v. State*, 667 S.W.3d 422, 433 (Tex. App.— Beaumont 2023, pet. ref'd).

On appeal, Coburn argues that the evidence is insufficient for the jury to have found beyond a reasonable doubt that he committed the offense of aggravated sexual assault of a child. The defense at trial appeared to focus on the assertion that Coburn was almost never at his home when Carl was present so he could not have committed the offense. In anticipation of the potential defenses, the State presented evidence, pursuant to Rule 413 of the Texas Rules of Evidence, to show Coburn

committed similar acts of sexual assault against Mary. Mary testified that Coburn inserted his fingers into her vagina when she was three and one-half years old. This evidence provided the jury with context to show that Coburn's finger penetrating Carl's anus was not an accident, mistake, or the result of innocent child-care techniques.

The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony, and it is the jury's responsibility to weigh the evidence and resolve any conflicts in the testimony. *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899. Carl, who was only five years old at the time of trial, testified on direct examination that Coburn inserted Coburn's finger inside Carl's anus and that it did not make him feel good. The jury could have believed Carl's testimony. The jury saw Carl in person, heard him answer the questions and describe what happened to him. Carl's testimony alone is sufficient to support Coburn's conviction for aggravated sexual assault of a child. *See* Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1); *MacDonald*, 2020 Tex. App. LEXIS 1850, at *10. In addition, the jury heard testimony from professionals who have many years of experience and training with these types of cases which could have assisted the jury in understanding Carl's testimony. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *See Williams*, 235 S.W.3d at 750.

While the defense presented evidence tied to the days prior to and including the date of the offense listed in the indictment that if believed by the jury may have favored the defendant's theory that the defendant was not alone with Carl or he lacked an opportunity to commit the offense on certain dates, the State was not bound by the single date of the alleged offense listed in the indictment. As the Court properly instructed the jury: "On or about – [T]he State is not required to prove the exact date alleged in the indictment. They may prove the offense, if any, has been committed at any time before the presentment of the indictment. The indictments were presented on December 2, 2022."

Reviewing the evidence in the light most favorable to the verdict, we cannot say any rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Villa*, 514 S.W.3d at 232. We overrule the issue on appeal in the aggravated sexual assault of a child case.

## Double Jeopardy Issue

In the indictment for indecency with a child by sexual contact, Coburn argues that the sexual touchings that were found by the jury to have occurred, happened at the same time and therefore constitute "a single act" such that he cannot be punished for both crimes. Generally, to raise a double jeopardy complaint a criminal defendant must timely raise the objection at trial and failure to do raise

it at trial may forfeit the claim. In *Gonzalez v. State*, the Texas Court of Criminal Appeals held that double-jeopardy claims could be forfeited by procedural default—simply by failing to make an objection at trial. 8 S.W.3d 640, 643 (Tex. Crim. App. 2000). But there is an exception which allows a double-jeopardy claim to be raised for the first time on appeal when two conditions are met: (1) the undisputed facts show a double-jeopardy violation is apparent on the face of the record; and (2) enforcement of the usual rules of procedural default serves no legitimate state interest. *Langs v. State*, 183 S.W.3d 680, 686-87 (Tex. Crim. App. 2006); *Gonzalez*, 8 S.W.3d 640 at 643. For convictions involving multiple punishments for the same offense, the double jeopardy violation is clearly apparent on the face of the record when the record affirmatively shows multiple punishments resulting from the commission of a single act that violated two separate penal statutes, one of which is subsumed in the other. *See Cervantes v. State*, 815 S.W.2d 569, 572 (Tex. Crim. App. 1991).

The face of the record here shows there are two separate indictments, under two separate statutes, describing two different acts committed by Coburn. The application paragraph of the charge in the aggravated sexual assault of a child case instructed the jury to consider whether Coburn "intentionally or knowingly caused the penetration of the anus of [Carl]….by the Defendant's finger." The application paragraph of the charge in the indecency with a child by sexual contact case

instructed the jury to consider whether Coburn did "[t]hen and there, with the intent to arouse or gratify the sexual desire of the defendant, engage[d] in sexual contact with [Carl], hereafter styled the complainant, by touching the anus or genitals of said complainant . . . ." Coburn appears to argue that the evidence points to solely one date, place, and time of the sexual acts because the indictments both state that the offenses occurred "on or about September 21, 2022." As we explained above, the trial court's charge to the jury instructed them that the date of offense they determine must be any date before the return of the indictment on December 2, 2022, and it is not restricted to the date alleged in the indictments.

Even if Coburn's touching of the child's penis and then his penetration of the child's anus with his finger may have happened on the same date, the indecency with a child by sexual contact case involving the touching, constitutes a separate act and offense from Coburn's penetration of the child's anus with Coburn's finger. "[T]he protection against double jeopardy is not violated if the [Legislature intended that the] offenses constitute separate allowable units of prosecution." *Ex parte Benson*, 459 S.W.3d at 73; *see also Maldonado v. State*, 461 S.W.3d 144, 151 (Tex. Crim. App. 2015) (Keller, P.J., concurring). Separate charges of indecency with a child and sexual assault of a child are proper when the evidence indicates separate offenses took place. *See, e.g., Patterson v. State*, 152 S.W.3d 88, 92 (Tex. Crim. App. 2004) (holding that when two penetrations were separated by a short

period of time, two independent assaults occurred); *Bottenfield v. State*, 77 S.W.3d 349, 358 (Tex. App.—Fort Worth 2002, pet. ref'd) (holding that even though appellant's two acts may have been committed during the same occurrence, appellant's touching of the victim's genitals with his finger was a separate and distinct criminal act from touching her genitals with his penis); *Murray v. State*, 24 S.W.3d 881, 889 (Tex. App.—Waco 2000, pet. ref'd) (holding defendant's double jeopardy rights were not violated by his punishment for both aggravated sexual assault and indecency with a child because the evidence at trial showed he "committed two separate acts--penetrating the victim's female sexual organ with his finger and touching her genitals with his tongue--that constituted two separate offenses"); *Hutchins v. State*, 992 S.W.2d 629, 633 (Tex. App.—Austin 1999, pet. ref'd) (affirming convictions for aggravated sexual assault and indecency with a child by contact because the acts, although close in time, were separate).

We conclude that Coburn has failed to meet his burden to show that the face of the record supports his double-jeopardy claim. The record shows two separate indictments, under two separate statutes, describing two different acts committed by Coburn. Therefore, we overrule Coburn's issue on appeal complaining about a double jeopardy violation in the indecency with a child by sexual contact case.

Having overruled both of Coburn's issues in these two cases on appeal, we affirm the judgments trial court cause numbers 27490 and 27492.

AFFIRMED.

JAY WRIGHT
Justice

Submitted on December 5, 2024
Opinion Delivered August 29, 2025
Do Not Publish

Before Johnson, Wright and Chambers, JJ.